UNITED STATES, Appellant

v

WINDELL J. FRYE, Airman Third Class,
U. S. Air Force, Appellee

8 USCMA 137, 23 CMR 361

No. 9208

Decided July 19, 1957

*Major Fred C. Vowell* argued the cause for Appellant, United States. With him on the brief was *Lieutenant Colonel Francis P. Murray.*

*Captain Richard C. Bocken* argued the cause for Appellee, Accused. With him on the brief was *Lieutenant Colonel Stanley S. Butt.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

In the early morning hours of November 8, 1955, at Nouasseur Air Depot, French Morocco, North Africa, the nine-year-old daughter of an Air Force officer was abducted from the trailer in which she and her parents lived. She was carried by the accused to a nearby area. There the accused performed indecent liberties upon the child's person and attempted to have sexual intercourse with her. During these acts, the victim continually screamed. She was then choked into unconsciousness. Upon hearing voices in the vicinity, the accused fled the scene. However, he was quickly apprehended by the Air Police.

As a result of his brutal conduct, the accused was charged with attempted rape and attempted sodomy, both in contravention of Article 80, Uniform Code of Military Justice, 10 USC § 880, and burglary, in violation of Article 129, Uniform Code of Military Justice, 10 USC § 929. He was found guilty and sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for twenty-eight years. The convening authority approved the conviction, but it was later set aside by a board of review because of the failure of the law officer to grant a continuance to the accused. The Judge Advocate General of the Air Force certified the following issue for our consideration:

"Was the Board of Review correct, under the circumstances of this case, in its determination that the accused was materially prejudiced by the denial of the continuance requested by the defense counsel?"

As already noted, the accused was apprehended on November 8, 1955, the date the offenses were committed. On December 3, 1955, charges were preferred. The Article 32 investigation was begun two days later. The accused requested Captain Saltzman to represent him and that officer was made available on December 8, 1955, and actually served as his defense counsel during the investigation. On December 9 the accused was admitted to the Base Hospital for psychiatric evaluation. Because of the nature of the case and the seriousness of the charges, it was recommended that the accused appear before a board of psychiatrists. On December 22, 1955, he was flown to the United States Air Force Hospital at Wiesbaden, Germany, for further examination. A board of officers was convened, and it was determined that the accused was sane.

The accused was returned to Nouasseur in mid-January 1956. In the meantime, Captain Saltzman had completed his overseas assignment and had returned to the United States. For a time, the accused refused to consult with his newly appointed defense counsel, Lieutenant Hayes, or to cooperate in his defense. When he finally agreed to cooperate, the Article 32 investigation was completed. This occurred on January 20, 1956. The charges were referred for trial on February 1, 1956, and the accused was served with a copy of the charges on February 4, 1956.

Shortly after the service of the charges, defense counsel went to Germany for the express purpose of interviewing the psychiatrists who had examined the accused and Office of Special Investigations agents who had obtained certain statements from him while he was in the hospital. On February 29, 1956, defense counsel requested the convening authority to delay the trial until April 17, 1956. He based his request on the following grounds:

"My interrogation of the military psychiatrists involved, leads me to believe that I would fail in my duty to the accused, considering his obvious maladjustment, if I did not attempt to obtain testimony from other psychiatric experts of a different school of diagnosis. I have leads to experts in the Zone of Interior with whom I desire to communicate to this end, with a view to obtaining a deposition. To accomplish this needed preparation I cannot be ready to go to trial on 5 March as previously contemplated."

Trial counsel concurred in the request for delay because he saw "no reason why the delay would seriously interfere with or hamper the case." By endorsement dated March 8, 1956, the convening authority denied the request, and directed trial counsel "to proceed forthwith in the trial of the accused."

The case came on to be heard on March 27, 1956. Defense counsel renewed his motion for a continuance. The law officer also denied it, and the trial proceeded. The mental responsibility of the accused was not brought in issue. On reviewing the case, an Air Force board of review concluded that the ruling was an abuse of the law officer's discretion.

Before this Court, the Government contends that the board of review erred in its conclusion because defense counsel did not show "reasonable cause" for a continuance. Article 40, Uniform Code of Military Justice, 10 USC § 840, provides that a court-martial may for "reasonable cause" grant a continuance to either party. United States v Knudson, 4 USCMA 587, 16 CMR 161. Paragraph 58c, Manual for Courts-Martial United States, 1951, provides that among the grounds that may be considered reasonable is "insufficient time to prepare for trial." It is, therefore, important to inquire into the specific basis of defense counsel's claim of unpreparedness.

Defense counsel entered the case "approximately the week between Christmas and New Year's, 1955." The record shows several applications for delay of the pretrial investigation and postponement of the trial. The details are unimportant. But the reasons for the applications are significant. These were two in number. The first was the need to inquire into the accused's sanity; and the second was to interview the Office of Special Investigations agents in Wiesbaden, Germany, who had obtained pretrial statements from the accused during his hospitalization in that city and to evaluate their testimony from the defense standpoint.

As early as February 3, 1956, defense counsel indicated that he would need about a week after interviewing the psychiatrists and Office of Special Investigations agents in Germany to "complete preparation of . . . [his] case." He returned from his investigation in Germany either on or shortly before February 29. At that time he submitted his request for postponement of the trial until April 17. The application was predicated solely on the need to obtain an opinion on the accused's sanity from psychiatrists of a "different school of diagnosis" from

**139**

those in the military. The sanity question is also the only real ground for the renewal of the motion at the trial. This is made apparent from the following colloquy at the hearing on the motion:

"LO: Then your sole basis for request for continuance is the opportunity to query other psychiatrists on the accused's mental condition?

"DC: That, and an opportunity to further prepare my own—prepare myself to examine the prosecution's psychiatrists, if such a course ever becomes necessary. However, you correctly stated the primary purpose, sir.

"LO: Does defense counsel feel that he is adequately prepared except for the psychiatric evaluation of the accused?

"DC: Except for matters relating to that, yes, sir. However, that is such a central element to the case or may be as the case develops that to say I am adequately prepared on the rest is, perhaps, a misleading statement, in view of its integral relationship to the accused and the other elements of the case, from the viewpoint of the defense."

Manifestly, a conclusion that the denial of the continuance deprived defense counsel of the opportunity to prepare must rest on the assumption that he was denied the right "to query other psychiatrists." True, defense counsel maintained that he also needed time to prepare himself for a possible examination of the prosecution's doctors, but only "if such a course ever becomes necessary." Defense counsel, however, had interviewed the doctors in Germany, and it seems clear that this remark about preparation was related only to what he hoped to elicit from the "leads" that he had to doctors in the United States. He made no reference to consulting medical writings or other materials for the purpose of disputing the findings of the psychiatrists who had examined the accused. His preparations, therefore, were directed entirely to obtaining the opinion of other psychiatrists because he "[felt] that doctors differ on this question."

**140**

Thus, the issue is simply this: Was defense counsel entitled to put off the trial until he could determine whether there were doctors more "sympathetic" to the defense?

This striking fact is that to justify the delay defense counsel did not even suggest, much less offer any evidence to show, that any qualified doctor would make a finding on the accused's mental condition contrary to, or different from, that reached by those who had already examined and tested the accused. *And there is still no suggestion that the accused is anything but sane.* We cannot say, therefore, that the refusal to grant a continuance prejudiced the accused. For all we know, every doctor, military and civilian, who examines the accused and his medical records might agree with the diagnosis that was made on two separate occasions in different hospitals in different parts of the world.

In the light most favorable to the accused, the situation here can be compared to that in United States v Schick, 6 USCMA 493, 20 CMR 209. There, as in this case, the defense counsel was dissatisfied with the military psychiatrists' opinions on the sanity of the accused and attempted to obtain the opinions of doctors in the United States. Consequently, disregarding the absence of even an intimation of insanity, we should go no further than we did in the Schick case. Although, as appears more fully from his separate opinion, Judge Latimer would entirely reverse the board of review and sustain the ruling of the law officer, he is willing to join me in this disposition of the case. Accordingly, the decision of the board of review is reversed. The record of trial is returned to The Judge Advocate General of the Air Force for resubmission to the board of review for further inquiry into the accused's sanity. If the accused produces competent evidence to the effect that he had, or has still, a mental condition which affects his legal responsibility for the offenses he committed, a rehearing will be ordered. If no such evidence is available, the board of review will consider the record of trial on the merits.

LATIMER, Judge (concurring in the result):

I concur in the result.

Generally I prefer the approach of the Chief Judge, but because there never has been, and there is not now, any issue of mental responsibility, I would not return the case to a board of review for inquiry into insanity. That is a question which should be raised by the accused in the manner provided by the law if he has any evidence touching on that issue. However, neither of my associates can recede from his position without prejudicing the accused and so, to dispose of the case, I am willing to join the Chief Judge in his disposition. By doing that, I extend the accused a possibility of having his mental responsibility inquired into by a board of review.

Presently, the only question before us is whether the law officer abused his discretion in denying a continuance. Judge Ferguson answers the question in the affirmative, while the Chief Judge reaches a contrary result because he concludes there is error without prejudice. I am right in the middle for, as I understand the law, a discretionary ruling is not erroneous unless it is arbitrary, capricious, or unrestrained. In this instance, the ruling is just the converse, for it is legally and factually supported by the record, and there is no error. However, were I to conclude the law officer erred, I would have to find prejudice.

From their decision, it is apparent that the members of the board of review would have ruled differently from the law officer had they initially considered the motion for continuance. That, however, is not the test. Reasonable persons may disagree on two alternative methods of deciding an issue, and either may be well within discretionary limits. Certainly, the judgment exercised by the law officer is not to be deprived of force merely because a higher reviewing authority might have acted differently.

In order for us to charge the law officer with error, it is necessary that we find he abused his discretion. To do that in this case, we would have to rely principally upon the facts and arguments favorable to the accused. That is not the proper measuring rod to be used, as the burden is on the accused to show the ruling was erroneous and, in order to make a proper assessment on that score, all evidentiary items and fair inferences for and against both parties must be assembled in the measuring device used to test the ruling. Therefore, let me point to some evidence which tends to support the law officer's decision. The record shows that defense counsel had been associated with the case for approximately three months at the time of trial, and he was aware during the entire period that the mental condition of accused would be the main line of defense if some evidence to overcome the presumption of sanity could be obtained. He knew that the accused had been examined by a qualified psychiatrist in Morocco and by three others in Germany. While it is apparent their examination supported mental responsibility, defense counsel was authorized and did travel to their locale to personally interview them. He does not contend their reports, findings, and conclusions were not made available to him or that he was denied the opportunity to consult with or obtain the opinion or addresses of other psychiatrists at the time he was present in Germany. Furthermore, from the time of his appointment until the time of trial, he did nothing whatever toward communicating with any prospective medical witness. Having failed to take any affirmative action to develop leads for prospective psychiatric testimony, if any could be obtained, the defense was obliged to make a motion which was the quintessence of indefiniteness and uncertainty. It was not even asserted that there was a remote probability that experts might differ as to accused's mental responsibility. All counsel said was: "I feel that doctors differ on this question and the doctors that I have had an opportunity to question have not differed." Of a like tenor are his opening remarks in support of his motion—not that he intended to raise mental responsibility as an issue,

141

but that potentially the plea might encompass that form of defense. Lastly, up to the day of trial, no communication of any kind had been directed to any psychiatrist, even to ascertain the possibility of obtaining an opinion on accused's mental condition at the time of the crime or subsequent thereto.

Having mentioned the lack of any showing by the defense to support the motion for a continuance, I move on to state some other facts weighing heavily in favor of holding the trial at the time ordered. The offenses charged were allegedly committed nearly five months prior to the time of trial. The memory of witnesses, especially that of the nine-year-old victim, might dim. She had been the subject of a recent bestial attack, and the sooner she could be freed from the strain of having to reconstruct the horrible experience, the sooner she could start on the road to forget. Delays, uncertainties of life, changes of residence, and other contingencies add to the difficulties of prosecution. In this instance, the child and other witnesses for the prosecution belonged mostly to the military community, and they were subject to being moved on short notice to other stations.

Manifestly from what I have related above, there is much to support the ruling by the law officer. Not only may he have reasonably concluded that defense counsel failed to come forward with any good reason for a continuance or facts to show due diligence, but, in addition, he could find that, after the Government had furnished the accused with two separate mental examinations by qualified psychiatrists, justice demanded the trial proceed. Every lawyer and judge familiar with the practice of criminal law knows that a familiar tool used to defeat prosecution is delay, and, in the face of this record, I cannot agree that, as a matter of law, the law officer abused his discretion in narrowing that possibility. To find otherwise is to mold the general rule to state that he has discretion in the area of continuances only so long as he chooses to rule in favor of the accused. That cannot be the law, for,

if he has discretion to rule, then he must be allowed to exercise it for or against either party so long as he does not exceed the bounds of reason.

Some suggestion is made that in this type of case, lack of diligence is not available against an accused and he is entitled to a continuance upon the assertion by his counsel that the defense is unprepared to proceed. That, of course, is not the law, nor should it be. There are two parties to a criminal prosecution, and a continuance for either is only a matter of right when the showing made by the requesting party is sufficient legally to require a finding in his favor. In almost every American jurisdiction, the burden is on the moving party to show reasonable cause for a continuance, and the rule does not change merely because the defendant is the movant. Most assuredly, upon the basis of this record, I am convinced that the law officer could rule properly that the defense did not carry the necessary burden.

I, therefore, answer the certified question in the negative and join the Chief Judge in reversing the decision of the board of review.

FERGUSON, Judge (dissenting):

I dissent.

The board of review, in concluding that the accused was prejudiced by the refusal of the law officer to grant the continuance, said:

"In our view, defense counsel was not given sufficient time to perfect his defense. In his own words, he emphasized that accused's mental responsibility either total or partial was the central theme of the defense. *Moreover, he was not prepared for trial on that issue.* Furthermore, defense's theory of the case was never made an issue at trial." [Emphasis supplied.]

Before this Court the Government advanced the contention that the board of review erred in arriving at its conclusion because defense counsel had failed to show "reasonable cause" for a continuance. Article 40, Uniform Code of Military Justice, 10 USC § 840, provides that a court-martial may for

142

"reasonable cause" grant a continuance to either party. United States v Knudson, 4 USCMA 587, 16 CMR 161. Paragraph 58c, Manual for Courts-Martial, United States, 1951, in implementing this provision of the Code, lists among the grounds that may be considered reasonable in granting a continuance the fact that counsel have had "insufficient time to prepare for trial." I believe this goes to the very heart of the issue now before us. Defense counsel had claimed both before trial and prior to arraignment, that he simply was not prepared to adequately represent the accused. The law officer's denial of the motion for a continuance thus had the effect of forcing an admittedly unprepared counsel to unwillingly proceed to trial. Assistance is not effective when counsel has insufficient time to prepare his defense. United States v Bergamo, 154 F2d 31 (CA3d Cir) (1946). Although the prompt disposition of criminal cases is to be commended and encouraged, one charged with a serious crime must not be stripped of his right to advise with counsel and prepare his defense. Walleck v Hudspeth, 128 F2d 343 (CA 10th Cir) (1942).

The Government further argues that counsel's request was frivolous and dilatory because he had failed to exercise due diligence in securing available psychiatric testimony on behalf of the accused. Assuming, without expressing an opinion, that this contention is sound, can it prevail against this accused? I think not; for to hold otherwise would be to visit the sins of the defense counsel upon the accused. It is repugnant to our Anglo-Saxon system of jurisprudence to intentionally penalize an accused for the incompetent and ineffective assistance of his appointed counsel. This is especially so in the military where an accused has little if any control over the selection of his appointed counsel. In this case the first appointed defense counsel—Captain Saltzman—had been requested by the accused and had represented him during the pretrial investigation, until relieved of his duties and transferred to the Zone of Interior during the accused's absence and without the knowledge or consent of the accused.

The clear intent of the Uniform Code of Military Justice and the Manual for Courts-Martial, supra, is that an accused shall have full opportunity to prepare for trial. We have held it to be an abuse of discretion on the part of the law officer to refuse to grant defense counsel a continuance after trial had begun in order to obtain a defense witness. United States v Plummer, 1 USCMA 373, 3 CMR 107. In United States v Sizemore, 2 USCMA 572, 10 CMR 70, we held that the law officer had erred to the prejudice of the accused in not permitting defense counsel a ten-minute recess in order to get "his thoughts together" prior to presenting final argument. Thus, regardless of the ability or inability of the appointed counsel to offer adequate representation, I believe the accused was denied the effective assistance of counsel. As the Supreme Court of the United States stated in Glasser v United States, 315 US 60, 62 S Ct 457, 86 L ed 680, at page 76:

". . . The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial."

I do not wish to be understood as implying that the Government is at the mercy of defense counsel who continually claims unpreparedness thereby indefinitely postponing trial. If such claims are frivolous or intended solely for the purpose of delay, then recourse may be had by the removal of such dilatory counsel by competent authority and by replacing him with counsel who will effectively assist the accused. Neither do I wish to derogate from the well-settled principle that the question of a continuance is one directed to the sound discretion of the law officer and will not be reversed on appeal in the absence of a clear showing of an abuse of discretion. United States v Knudson, supra; United States v Nichols, 2 USCMA 27, 6 CMR 27; paragraph 58d, Manual for Courts-Martial, supra. However, unless the law officer is satis-

143

fied that counsel is in fact able to proceed, I believe the interests of military justice will best be served by granting a reasonable length of time to permit him to perfect his case.

In the case at bar the defense counsel had at trial sought a continuance of three weeks. The trial counsel had, several weeks prior thereto, concurred in a similar request directed by the defense counsel to the convening authority. At that time the trial counsel had informed the convening authority that all important witnesses would be available for a "minimum of five months" and that the delay in bringing the case to trial would not hamper the preparation of the Government's case. In addition, trial counsel had noted without contradiction that local psychiatrists were unavailable in Nouasseur, French Morocco. In United States v McFerren, 6 USCMA 486, 20 CMR 202, we recognized the importance of the locale of trial in securing expert witnesses when we said:

"While this case must be resolved on its particular facts, it is of importance in formulating the necessary principles not to overlook the peculiar situation of the military serviceman. In many instances, accused persons in the military service are in foreign lands and the possibilities of obtaining expert witnesses to assist them in their defense is considerably restricted. Here, the Government found it necessary to transport a handwriting expert from Japan to Okinawa to establish its case against the accused. Apparently no other person qualified in this field was available at the place of trial, and it would be difficult indeed for the accused to obtain the services of an expert. While we have not been confronted with many handwriting cases in which expert witnesses have been used, the possibilities of their use is ever present, and the limitations facing an accused in the service make it necessary that he be given consideration not necessarily granted to persons tried in local courts. *Certainly, in considering whether a law officer abused his discretion, we must consider the handi-*

*caps placed upon an accused person in presenting his side of the controversy."* [Emphasis supplied.]

Furthermore, the seriousness of the charges—eloquently attested to by the imposition of a sentence to twenty-eight years' confinement at hard labor—would require that the defense be given every reasonable opportunity to present the accused's case in its most favorable light.

The Court's reliance on the case of United States v Schick, 6 USCMA 493, 20 CMR 209, is misplaced for there the issue of the accused's sanity was adequately raised at trial. Although his efforts to obtain American psychiatrists were unsuccessful, he did succeed in obtaining the services at trial of two highly-qualified Japanese psychiatrists. See the Court's subsequent decision in Schick, 7 USCMA 419, 22 CMR 209. In our original decision remanding the case to the board of review for reconsideration of the question of sanity because of "unusual circumstances," we said:

"Once an accused has had a fair opportunity at the trial level to litigate the issue of his mental responsibility for an offense and his capacity to stand trial, those issues should, on appeal, be accorded the same treatment as all other contested matters. We mean that the question should not be tried *de novo* at every appellate level. A day in court means one fair and just trial of contested issues, and when that has been granted to an accused, he does not have a right to a second trial in an appellate forum." [6 USCMA 494, 20 CMR 210.]

In the case at bar, however, the accused, because of his counsel's lack of preparedness, was unable "to litigate the issue of his mental responsibility" before the triers of fact. Therefore, in my view, he has never had the "one fair and just trial of contested issues" referred to by the Court in the Schick case, supra.

I believe the board of review did not err in concluding that the law officer's

144

denial of the request for continuance materially prejudiced the substantial rights of the accused. I would affirm the board of review's decision.