UNITED STATES, Appellee

v

RALPH W. CADMAN, Airman First Class,
U. S. Air Force, Appellant

10 USCMA 222, 27 CMR 296

No. 11,964

Decided February 13, 1959

*Captain John H. Leonard* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel Robert O. Rollman.*

*Lieutenant Colonel Francis R. Coogan* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Robert W. Michels* and *Major Carl Goldschlager.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A general court-martial convicted the accused of three specifications of larceny of property of the Japan Central Exchange, of a value in excess of $50.00, of housebreaking and attempted housebreaking,[1] and sentenced him to a dishonorable discharge, total forfeitures, and confinement at hard labor for two years. The findings of guilty and the sentence were affirmed on intermediate review. The accused appealed to this Court alleging three errors of law which he contends require reversal of the conviction. All of the issues relate to a pretrial statement by the accused which was admitted into evidence over defense objection.

First, the accused maintains the pretrial statement is inadmissible because it was obtained from him after he requested, but was deprived of, the opportunity to consult with counsel. See United States v Rose, 8 USCMA 441, 24 CMR 251; United States v Gunnels, 8 USCMA 130, 23 CMR 354. There is no evidence in the record of trial to support the contention.

During a "stake out" the accused was apprehended in the early morning hours of Saturday, September 28, 1957, as he attempted to break into the Base Exchange at Johnson Air Base, Japan. He was taken to the Air Police office, advised of his rights under Article 31 of

[1] Articles 121, 130, and 80, Uniform Code of Military Justice, 10 USC §§ 921, 930, 880.

the Uniform Code by Agent La Belle, and then interrogated. According to Agent La Belle the accused "told . . . [him] he wanted legal assistance or legal advice." Thereupon, the agent remarked "Let's give it up." He said that since both he and the accused were "shook up" from the incident, he thought they should "go to bed and get some sleep" and talk about the matter later. The accused agreed. He was put into a detention cell and left alone until the afternoon of that day. At that time La Belle returned and took the accused to a Tokyo police station. There, the accused was identified by a Korean. The accused was then returned to the air base detention cell. About 3:30 p.m. on Sunday, Agent La Belle again saw the accused. He told the accused he had been working all week-end and would "just as soon go home" but if the accused "wanted to talk" he "was ready to listen." The accused replied that he would talk. They went to La Belle's office. La Belle again read Article 31 to the accused and told him "what" he was investigating. The accused answered a series of questions put to him by the agent. A typewritten statement embodying the substance of the answers was prepared. The accused read the statement and made some corrections. He then swore to the truth of the recitals in the document and signed it. Agent La Belle further testified that he construed the accused's remark about counsel as a mere statement of preference, not a request for counsel; in other

223

words, he concluded the accused did not want to talk further about the matter until he had legal advice. The accused did not request him to "contact anybody" or to use the telephone; if he had, the agent would have complied with the request. It also appears from the agent's testimony that the accused was free to ask the desk sergeant for permission to use the telephone.

Testifying in connection with the admissibility of the statement, the accused substantially corroborated La Belle. He said that when he remarked he would like legal advice before he "talked to anyone," La Belle indicated that since they were tired, they had both better get to bed and get some rest. The interrogation was terminated and he was placed in a detention cell. In the day and a half that followed, he made no request for legal assistance. He admitted that neither La Belle nor any other agent told him at any time that he could not consult counsel. He did "not believe . . . [he] actually asked Mr. La Belle to get . . . [him] a lawyer." But he testified that from La Belle's "attitude and by not answering my questions—I don't know how I actually got it in my mind, I thought I couldn't have any legal advice at that time."[2] When he made his statement on Sunday, he had "more or less resigned . . . [himself], that . . . [he] might as well make a statement," since he had been told he had been identified by the Korean at the Tokyo police station as the person who had "sold him stolen BX property."

The convening authority and the board of review concluded the accused's remark about counsel was ▬▬▬▬█ merely a "statement of preference," not a "request for" an opportunity to consult with counsel. Whether this is a correct interpretation of the discussion is unimportant. Assuming the accused's remark constituted a request, the fact of the matter is that the interrogation was terminated immediately thereafter without any statement by the accused. Consequently, unless denial of the opportunity to consult counsel is tied to the statement made a day and a half later, there is no bar whatever to its admissibility in evidence. United States v Melville, 8 USCMA 597, 25 CMR 101; cf. United States v Wheaton, 9 USCMA 257, 26 CMR 37.

The record of trial shows the accused was not questioned at the outset of the second meeting by Agent La Belle. He was merely asked if he desired to make a statement. If he did La Belle would listen, otherwise he would leave. The accused had not been questioned for a day and a half, and he does not maintain he was subjected to any improper pressures or influences during that period. Although the original interview was terminated when he indicated he preferred to have legal advice, the accused made no request to see a lawyer or even to call one. And the record shows that if the request had been made, it would have been honored. The evidence compellingly establishes that the accused volunteered a statement because he believed "the jig was up." The evidence also shows no connection between the events of the first interview and those of the second. If there was an improper denial of the right to consult counsel on the first occasion, it had no apparent effect or influence on, or carry over to, the second meeting between the accused and the agent. Speaking of a substantially similar situation in United States v Melville, supra, page 600, we said, "Nothing of an incriminating nature arising out of the first interrogation was presented. Concerning the second interrogation, . . . the accused conceded that he was fully advised of his rights and that he received neither promises nor threats." See also United States v Hogan, 9 USCMA 365, 26 CMR 145. In this regard, the case

---

[2] It is possible to construe the accused's testimony as indicating that he concluded he was not entitled to appointed counsel as distinguished from the right to consult with counsel. See United States v Wheaton, 9 USCMA 257, 26 CMR 37. From that standpoint, the accused would have no basis for objecting to the admission of the statement. The point, however, was not pursued at the trial or before the board of review; consequently, we shall not give it any attention in our consideration of the case.

is different from *Wheaton* where the accused was questioned by the air police, and shortly thereafter, while still in custody, was questioned by, and gave a statement to, agents of the Office of Special Investigations. Therefore, there was no error in the admission here of the accused's pretrial statement.

The accused's second claim of error concerns alleged inaccuracies in the law officer's instructions on the right of the court-martial to consider the pretrial statement if it determined that at the first meeting he was deprived of the right to consult counsel. Since there was no issue requiring the instruction, the alleged error did not harm the accused. United States v Spivey, 8 USCMA 712, 25 CMR 216.

Finally, the accused maintains that the law officer erred to his prejudice in overruling a defense objection to the contents of the pretrial statement actually presented to the court-martial. Trial counsel had masked part of the statement before offering it into evidence. Defense counsel objected to the masking, and moved that the whole of the statement be admitted. The theory of the objection was that the concealment of part might give rise to an inference that the material blocked out was "damaging" to the accused.[3] The objection was overruled. The defense did not thereafter offer the covered over part of the statement.

The Manual for Courts-Martial, United States, 1951, provides that if "only part of a confession or admission . . . is shown, the defense by cross-examination or otherwise may show the remainder of the statement." Paragraph 140*a*. This is a correct statement of the general rule which obtains in the trial of a criminal case. The reason for the rule is that it "would be manifestly un-

fair to an accused to permit the prosecution to pick out incriminating words in the statement . . . and put them in evidence while at the same time excluding the remainder of the statement or conversation, in which the accused seeks to explain the incriminating passages." United States v Harvey, 8 USCMA 538, 546, 25 CMR 42. Here, the accused did not attempt to introduce the concealed part by cross-examination. The question then is whether his objection is sufficient to require the law officer to admit the whole of the statement, or whether the accused was bound to offer the remainder himself if he desired to have the court consider it. The Government contends the latter is the correct procedure. See Manual for Courts-Martial, supra, paragraph 145*a*. To hold otherwise, it argues, is to confer upon the defense the power to control the selection and presentation of the Government's evidence. See United States v Bloomfield, 11 CMR 686. We need not decide the correctness of this view. The material in issue is not admissible exculpatory or mitigating matter. On the contrary, it is incriminating matter relating to the housebreaking charge to which the accused had pleaded not guilty. Certainly, therefore, it was not prejudicial but beneficial to the accused to exclude it from evidence in connection with the findings. The accused himself recognizes this circumstance because he has limited his claim of prejudice to prejudice "as to the sentence."[4] The possibility that the court-martial regarded the concealed portion as a confession of an uncharged crime seems to us to be too speculative to justify serious consideration. But even assuming there is a fair risk the court-martial reached that conclusion, it compellingly appears it was not influenced by that idea in its deliberation on the sentence.

The maximum permissible punish-

---

[3] Trial defense counsel did not particularize the nature of the "damage" but on this appeal appellate defense counsel contend the court members would conclude that the concealed matter related to another offense which the accused "had committed and confessed to."

[4] If exclusion of the matter was beneficial in regard to the findings, the question arises as to whether the law officer was nonetheless bound to admit it during the sentence procedure. The point is not considered by the accused and we put it aside to reach the merits of the accused's argument.

ment for the offenses of which the accused was found guilty included confinement at hard labor for twenty-five years. The court adjudged a sentence which included confinement at hard labor for two years. Under the circumstances we think it indisputable that if the court-martial believed the blocked out material related to an uncharged offense, it did not consider that offense serious, and was in no way influenced by it in its determination of the sentence. United States v Washington, 8 USCMA 588, 25 CMR 92.

The decision of the board of review is affirmed.

Judge LATIMER concurs.

FERGUSON, Judge (concurring in the result):

I am unable to make the distinction between a "statement of preference" and a "request for" an op- ■ portunity to consult with counsel as did the convening authority and the board of review. It is certainly within the realm of possibility that the average military accused, when apprehended and interrogated, will be awed and frightened and perhaps somewhat inarticulate. I do not believe that such an accused must request legal counsel in the terms of technical nicety in order to be afforded this fundamental right. However, I concur in the result upon the grounds that a denial of this right to the accused during his first questioning had no effect upon his subsequent confession during the latter interrogation. United States v Hogan, 9 USCMA 365, 26 CMR 145.

I find myself in disagreement with the last paragraph of the principal opin- ion, which is apparently ■ predicated upon the *de minimis* doctrine. See my dissents in United States v Cummins, 9 USCMA 669, 26 CMR 449; United States v Reams, 9 USCMA 696, 26 CMR 476; and United States v Green, 9 USCMA 728, 26 CMR 508. This requires the Court to review this sentence on an *ad hoc* basis. However, as the majority of this Court has approved of the use of this doctrine in adjudging the legality of sentences, I am bound by their interpretation of the law. However, I am impelled to add I do not agree that if this case were returned to the board of review for reconsideration the same sentence would necessarily be adjudged.