UNITED STATES, Appellee

v

CLIFFORD M. ADKINS, JR., Airman Second Class,
U. S. Air Force, Appellant

11 USCMA 9, 28 CMR 233

*Major Dwight R. Rowland* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel Philip J. Williamson* and *Lieutenant Colonel Robert O. Rollman.*

*Major Lawrence J. Gross* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Francis R. Coogan* and *Lieutenant Colonel Robert W. Michels.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Accused was convicted by general court-martial of two larcenies, two housebreakings, and an attempted housebreaking, violations of Articles 121, 130, and 80, Uniform Code of Military Justice, 10 USC §§ 921, 930, and 880, respectively. He was sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for one year. The findings and sentence having been affirmed by intermediate appellate authorities, accused petitioned this Court, and we granted review on three issues. Each, together with the facts germane to the resolution thereof, will be considered separately.

I

The first issue concerns an alleged instructional error. In his final charge to the court-martial, the ▮▮▮▮▮▮▮▮ law officer included the same instruction with which we were concerned in United States v Simpson, 10 USCMA 543, 28 CMR 109. The law officer, however, also repeatedly and properly charged the court-martial on the rule of reasonable doubt and the presumption of innocence and burden of proof. Taking the instructions by their four corners, there is no fair risk that the court members were misled into utilizing an incorrect yardstick in their deliberations. Accordingly, for the reasons set forth in the above-cited case, we conclude the questioned instruction could have no measurable impact on the findings, and hence accused was not prejudiced. See also United States v Smith, 10 USCMA 549, 28 CMR 115; United States v Blackwell, 10 USCMA 550, 28 CMR 116; United States v Davault, 10 USCMA 551, 28 CMR 117; United States v Tisdall, 10 USCMA 553, 28 CMR 119; and United States v Shomler, 10 USCMA 555, 28 CMR 121.

II

Accused's next contention concerns his pretrial confession which was allowed in evidence against him over his objection. He argues that the law officer erred in doing so. The pertinent facts are largely undisputed and, in order to resolve this issue, it is necessary that we develop them at some length.

In late November and early December 1958, an attempt was made to break into a certain building at Dobbins Air Force Base, Georgia, and other buildings there located were forcibly entered, coin operated machines looted, and liquor stolen. Damaging evidence connected the accused with at least the most recent of these offenses. He was confined on December 4, 1958, and interviewed by agents of the Office of Special Investigations that day. Thereafter he was asked if he would agree to submit to a lie detector examination in order to support the truthfulness of a statement he made on December 4, 1958. He appeared eager to do so and voluntarily consented. Consequently, arrangements were completed for such a test, and on December 5, 1958, two OSI agents escorted accused to the Atlanta, Georgia, office of the OSI, where the poly-

graph examination was to be given by a man from another base. However, after arrival there, accused declined to take the test, indicating he was confused and thought he should confer with an attorney before doing so. The proceedings were thereupon terminated, and accused was driven by the two agents back to Dobbins Air Force Base, where he was returned to confinement. During the drive, there was a general discussion about accused's desire for counsel, and he mentioned the names of two Air Force attorneys stationed elsewhere. In that respect, he was apprised that the proper procedure was to contact the office of the staff judge advocate. At the confinement facility, accused told a guard on several occasions he wanted to talk to the staff judge advocate, and was informed he should submit a form requesting an interview.

On the night of December 8, 1958, accused filled out such a form, which he submitted the next morning. The guard thereupon telephoned the office of the staff judge advocate about the request, and immediately after the telephone conversation informed accused it would be impossible to set up an interview until possibly that afternoon or the next morning because the staff judge advocate was out of his office at a meeting. That afternoon, December 9, 1958, before such a meeting could be arranged, the two OSI agents went to the stockade and again interviewed accused. After proper warning he voluntarily executed a written confession, admitting that he committed the offenses for which he stands convicted. It was the admission of this statement to which the defense objected at trial, arguing that accused had been denied the right to counsel.

In United States v Gunnels, 8 USCMA 130, 23 CMR 354, this Court held that while a suspect, prior to the time a charge is lodged against him, has no right to the appointment of military counsel, he most assuredly has a right to consult with a lawyer of his own choice or to obtain advice from military counsel furnished by the staff judge advocate. Accordingly, it was there held that ac-

cused was denied the right to counsel when a subordinate of the staff judge advocate, at the latter's direction, misadvised him respecting the question of his entitlement to counsel. Likewise, in United States v Rose, 8 USCMA 441, 24 CMR 251, this Court held that accused's pretrial statement was inadmissible in evidence when, during his interrogation by Government agents, his request for an opportunity to contact his attorney was denied and he was erroneously informed he could not have counsel. See also United States v Wheaton, 9 USCMA 257, 26 CMR 37. Appellate defense counsel argue that the facts of the case at bar fall within the above-mentioned cases, urging that accused requested counsel and that the failure to furnish him advice operated affirmatively to deprive him of counsel.

Those decisions fix the law, but we find them inapposite in the present instance. The record contains no indication whatever that anyone, at any time, ever advised accused he had no right to counsel, nor was there any misadvice. To the contrary, when accused indicated he thought he should consult with counsel before continuing with the polygraph examination, that proceeding was immediately broken off, and accused was correctly apprised of the proper method for contacting the lawyers he mentioned. Moreover, when accused finally submitted his request to see the staff judge advocate in the proper form, action was taken to obtain an interview for him, and although accused had confessed before that officer learned of his request, the record shows he would have seen that accused obtained legal counsel or properly advised him of his right to a civilian attorney at his own expense. The record also discloses that during the interview on December 9, accused made no request for counsel, and that had the OSI agents been aware of any such desire on the part of accused, the interview would have been terminated immediately and accused would have been permitted to obtain legal advice. One of the agents who had accompanied the accused to Atlanta, Georgia, testified that accused never requested counsel of him but had, on

December 5, merely made "a comment to the effect that he would not take the lie detector examination until he had time to contact counsel which was located in Miami and he was advised that the proper procedure would be to see the Staff Judge Advocate." That, however, had been four days earlier, the agent did not interrogate accused in the interim period, and the latter said nothing whatever about counsel on December 9, 1958. Neither did he inform the interviewing agents that he had requested an appointment to consult the staff judge advocate. Nor is there any intimation that the agents were otherwise alerted.

Thus, it is clear that accused's reliance on *Gunnels, Rose,* and *Wheaton,* supra, is misplaced. He was never refused permission to obtain legal advice, nor was he misadvised, and action was taken to comply with every proper request he made. The investigators were never aware that he desired counsel before being interrogated on December 9, 1958, and, for all they knew, he could have discussed his predicament with a legal advisor. Accused knew of their purpose, yet he failed to inform them he was in fact waiting for the staff judge advocate to return to his office so as to be available for an interview. In addition, accused was properly advised of his rights in accordance with Article 31, Uniform Code of Military Justice, 10 USC § 831, including his right to remain silent. And last, and perhaps most important, while accused stated he did not know he could demand counsel on December 9, he testified he was quite aware he could request legal assistance, yet he failed even to mention such a desire to the OSI agents who took his statement. Under these circumstances, we conclude the defense raised no issue of denial of the right to counsel. Rather, it would seem that as in United States v Cadman, 10 USCMA 222, 27 CMR 296, accused volunteered his statement because "the jig was up," or for other reasons of his own. We, therefore, hold that the law officer properly overruled the defense objection to the admission in evidence of accused's confession.

## III

Finally, accused assails an instruction by the law officer that:

"A suspect has a right to consult with a lawyer of his own choice or qualified counsel made available to him by the Staff Judge Advocate if he expresses that desire at the time of an interrogation and the denial of that right would render a statement made at that interrogation following such denial, involuntary."

Appellate defense counsel contend that charge is improper because it limited the court members' consideration only to the time of accused's interrogation. The Government, on the other hand, strongly urges that the instruction was, under the facts of the instant case, correct and that, in any event, trial defense counsel waived any possible error therein.

As we have noted earlier, however, no issue was raised that accused was denied the right to counsel. Thus, we need look no further than our recent opinion in United States v Cadman, supra, to resolve this last issue. As we there pointed out:

". . . Since there was no issue requiring the instruction, the alleged error did not harm the accused."

See also United States v Spivey, 8 USCMA 712, 25 CMR 216. This issue, then, must also be resolved adversely to accused.

Accordingly, the decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

My views regarding the prejudicial vice of the instruction given herein on the effect of prima facie evidence were recorded in United States v Simpson, 10 USCMA 543, 28 CMR 109. There, as here, my brothers concluded that the error involved in advising the members of the court that "In law, prima facie evidence of a fact is sufficient to establish the fact, unless rebutted" was not

**13**

prejudicial, as, viewed in the light of the other instructions concerning reasonable doubt and the presumption of innocence, it could have been understood to mean only that the fact in question might be deemed established if the members entertained no reasonable doubt concerning its existence. I am yet unable to accept this reasoning, for I find the prima facie instruction totally inconsistent with the doctrine of reasonable doubt. I am also convinced that its effect was to cast the burden of proof upon the accused and to inform the court that a case sufficient to support his guilt in law was all that was required to convict unless the accused rebutted the Government's presentation. However, as I have already set forth in my dissent in United States v Simpson, supra, what I consider to be the defects in the majority's rationale, I simply record my disagreement with that phase of the principal opinion and pass to what I consider an equally important issue.

Upon his trial by general court-martial, this accused was found guilty of larceny, housebreaking, and attempted housebreaking, in violation, respectively, of Uniform Code of Military Justice, Articles 121, 130, and 80, 10 USC §§ 921, 930, 880. He was sentenced to dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for one year. Intermediate appellate authorities approved the findings and sentence, and we granted accused's petition for review. The principal issues now before us involve the question whether the accused was denied the right to consult with counsel prior to the occasion on which criminal investigators obtained a confession from him and whether the law officer's instructions concerning the matter were proper.

The accused came to the attention of investigators at Dobbins Air Force Base, Georgia, in connection with several housebreakings. On December 4, 1958, he was placed in confinement. He agreed to submit to a lie detector test concerning his guilt and, on December 5, was escorted by two Office of Special Investigations agents to Atlanta in order to undergo a polygraph examination. Upon his arrival in Atlanta, however, the accused declined to take the proposed test and stated his belief that he should consult with an attorney. On the return trip, accused mentioned the names of two officers, stationed at other bases, whom he desired to represent him. He was informed he should contact the staff judge advocate. Accused was returned to the base stockade, and he remained in confinement there until his trial. However, he did not remain silent concerning the matter of counsel. On each day during the period from December 5, 1958, until December 9, 1958, the accused repeatedly asked stockade personnel to obtain counsel for him or to arrange with the staff judge advocate for him to receive legal advice concerning his predicament. These requests were directed for the most part to an Airman Hughes whose assigned duties at the stockade are not reflected by the record. Hughes finally informed accused that he must request an interview with the staff judge advocate by filling out a "DD Form 510," and promised to help him with it "later." The use of the form was not, however, an inflexible requirement, for appointments with the staff judge advocate were frequently made on the basis of an oral request. The procedure followed with respect to accused's request is succinctly stated in the following excerpt from the latter's testimony on cross-examination:

"A. Everything seemed so mixed up, we have to do this this morning or on some detail and they would say we will get to it this afternoon we've got some things to do and I'll get to you the first thing in the morning and every day seemed to come into another one and it was only a matter of four days and before I knew it every day was coming and going and I made one formal request and I made at least a dozen verbal ones to Airman Hughes.

"Q. From time to time isn't it true that you have had discussions with other personnel at the guardhouse about the representation by counsel and so forth?

"A. I asked them what should I do that no one had come down to see me

and I thought the lawyer, a couple mentioned that they would send a lawyer down to talk to me and I thought they would and I mentioned to Hughes to get it and still nothing was done. I just didn't know."

Accused was finally furnished with a copy of the required form. However, when aid from Hughes did not appear, accused finally completed the form with the assistance of another prisoner and delivered it to Hughes. Hughes called the office of the staff judge advocate on December 9, 1958, and relayed accused's request. A secretary advised Hughes that the staff judge advocate was in a board meeting, but might be able to see the accused later that afternoon. Hughes gave this information to the accused. In fact, the staff judge advocate was never made aware of accused's persistent requests, and counsel was not made available until December 17, 1958.

After the accused was advised that the staff judge advocate was unavailable, OSI agents again appeared on the scene. On the afternoon of December 9, they interrogated Adkins after proper warning and obtained from him a complete statement concerning his participation in the offenses charged. At no time during the interview was the question of counsel discussed.

We have repeatedly held that a person suspected of an offense is, upon his request, entitled to consult with counsel or to be advised by the staff judge advocate concerning his right to legal assistance. United States v Gunnels, 8 USCMA 130, 23 CMR 354; United States v Rose, 8 USCMA 441, 24 CMR 251; United States v Wheaton, 9 USCMA 257, 26 CMR 37. Concededly, Airman Adkins had been correctly informed of his right to consult counsel, but how can such advice have efficacy when he is in confinement and depends solely upon stockade personnel for his contacts with the outside world? Obviously, it can be effective only if confinement authorities take prompt action upon any request made to them for assistance in obtaining legal advice. The accused repeatedly made such requests and did all he could to contact the staff judge advocate, to whom he had been referred by investigators. How then can it be concluded that he knowingly abandoned his right of consultation upon his interrogation on December 9? On the contrary, I think the record conclusively demonstrates that he sought assiduously to exercise his right but was prevented from doing so, either carelessly or intentionally, by the failure of the stockade personnel to take prompt action on his request. Nor am I impressed by the argument that the accused was tardy in filling out a written, formal request for counselling. I recognize the necessity for the use of standardized administrative procedures in the operation of any confinement facility. However, the record also demonstrates that Airman Hughes promised the accused assistance in preparing the form from the occasion on which he first made his request. Although the accused again and again made known his desires, the issue was delayed until he finally obtained the services of another prisoner on the night of December 8. It was only when the written form was finally submitted that Hughes deigned to initiate any action. In this respect, I take issue with the statement in the principal opinion that Hughes was merely a guard. His capacity is not shown in the record. However, it is apparent that he performed administrative rather than custodial functions, for it was he who contacted the office of the staff judge advocate and subsequently made an unsuccessful search of the stockade files for accused's written request for counsel. These duties are unlikely to be performed by a guard. Be that as it may, we elevate form over substance when we permit denial of counsel to an accused solely on the basis that, in making his request known, he failed to comply with every requirement of local administrative regulations.

I view this case, then, as one in which the accused, having been informed of his right to consult counsel, sought by every means at his disposal to exercise that prerogative. Nevertheless, for reasons which do not appear, it was effectively denied him. As I am of the opinion

that denial of the right to consult is as important as the advice, I would conclude that his confession made on December 9 was inadmissible. United States v Gunnels, supra; United States v Rose, supra. In my mind, the contrary view of my brothers imposes too heavy a burden upon a twenty-one-year-old airman, confined far from home and unable to seek the assistance of friends and relatives.

As I believe the record demonstrates that the accused was denied counsel as a matter of law, it was incumbent upon the law officer to exclude his confession without submitting the question to the members of the court-martial. Hence, I need not reach the question of the sufficiency of the instruction on that issue.

However, I do not construe our decisions in United States v Gunnels and United States v Rose, both supra, as limiting the issue to the narrow question whether an accused was misadvised of his right to counsel during interrogation by criminal investigators. Certainly, if deprivation of counsel results from the actions of other agents of the Government, their misconduct is imputable to the interrogators, and I doubt the accuracy of any instruction which limits the court members to consideration only of the events which transpired during interviews with military detectives.

I would reverse the decision of the board of review and order a rehearing.