UNITED STATES, Appellee

v

RICHARD A. BORSELLA, Basic Airman, U. S. Air Force, Appellant

11 USCMA 80, 28 CMR 304

---

No. 12,985

Decided December 24, 1959

*Captain Norman K. Hogue* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel James L. Kilgore* and *Lieutenant Colonel Robert O. Rollman.*

*Major Lawrence J. Gross* argued the cause for Appellee, United States. With him on the brief were *Colonel John F. Hannigan, Lieutenant Colonel Robert W. Michels,* and *Major Timothy G. O'Shea.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

An Air Force general court-martial in Japan convicted the accused of one charge of wrongful appropriation and several charges of larceny and housebreaking, in violation of Articles 121 and 130, Uniform Code of Military Justice, 10 USC §§ 921, 930. With some modification of the findings of guilty and the sentence, the conviction was affirmed. We granted review to consider a number of assignments of error.

Two of the claims of error pertain to the accused's mental state. It is contended the accused was prejudiced by the denial of pretrial requests for psychiatric examination, and that he was prejudiced at trial by the law officer's denial of a motion for a psychiatric examination by military authorities and for a continuance until completion of the examination. Since the trial motion is a renewal of the pretrial requests and is supported by the same evidence, we need not consider whether the pretrial motions were denied by the staff judge advocate rather than the convening authority, or even whether, as the accused contends, an erroneous standard was used to decide the motions.[1] We can properly review the correctness of the denial of the examination on the basis of the ruling by the law officer. See United States v Mickel, 9 USCMA 324, 26 CMR 104; United States v Wilson, 10 USCMA 337, 342, 27 CMR 411.

The need for a psychiatric examination of the accused by civilian doctors is, in an appropriate case, adequate ground for a continuance. See United States v Frye, 8 USCMA 137, 23 CMR 361; United States v Schick, 7 USCMA 419, 22 CMR 209.

It is clear, however, that the accused here was not interested in obtaining a continuance for the purpose of examination by civilian doctors. Rather, a continuance was the necessary result of his request for an order for examination "by military authorities." Consequently, evidence of the cost and the difficulty incident to an examination by Japanese doctors, which was submitted by the accused in support of the trial motion, has no bearing upon the narrow question of whether the accused was properly entitled to an examination by military psychiatrists.

The Manual for Courts-Martial, supra, provides that if before trial it appears to defense counsel there is "reason to believe" the accused insane, that fact "and the basis of the observation" should be reported to the convening authority, who will refer the matter to a board of medical officers. Manual for Courts-Martial, supra, paragraph 121, page 201. To justify the reference, however, the report on sanity must indicate a "substantial basis for the belief" that the accused is insane. Other language is used in the Manual to describe the procedures at trial. At that stage of the proceeding further inquiry may be had on "the bare assertion from a reliable source that the accused is believed to lack mental capacity." Manual, supra, paragraph 122*b*, page 202. But it is further provided that "a mere assertion" is not "necessarily sufficient" to impose any burden of inquiry. At least, superficially, it would appear that further inquiry may be granted at the trial upon a lesser showing of insanity than seems to be necessary to support a pretrial application. Whether this be so in fact need not detain us. Earlier, we observed that we can appropriately measure the correctness of the

---

[1] Defense counsel contend that under the Manual for Courts-Martial, United States, 1951, a request for further inquiry into the accused's sanity should be granted if there is a "substantial basis" for believing the accused is insane. They maintain that the pretrial requests were denied because there was "not conclusive" evidence of insanity presented in support of the motions.

**82**

denial of the requested examination by the evidence offered at trial. Thus, assuming there are two standards of proof, the measure of the lesser of the two is the touchstone for our review.

We note first that defense counsel himself never asserted the accused lacked mental capacity to █ stand trial or to commit the offenses charged. In the out-of-court hearing on the motion, he iterated and reiterated that the defense was not "alleging that the accused is insane"; it only wanted to be "allowed to find out" what the accused's mental capacity was. Consequently, if there is even a bare assertion of insanity in the record, it must be found in the six-page report of the Senior Clinical Psychologist of one of the schools of the California Youth Authority, submitted by the defense in support of the motion. The report bears a date almost six years previous to the trial. We have read it carefully. Nowhere in it is there any expression of doubt as to the accused's mental competency. On the contrary, the psychologist concluded his report with the observation that the accused is of "bright normal in general intelligence," and shows "no essential emotional pathology nor any distortion of the rational processes nor any basic organic abnormality that is primarily in the etiology." He indicated the accused was an "affectionately deprived lad," whose delinquency was symptomic of an attempt "to gain status" and emotional and social satisfaction. The psychologist gave it as his opinion that as the accused matured he could, "with his good mental capacity" and favorable personality traits, "very probably . . . overcome many of his early behavior deviations." It is impossible to read this report and say it constitutes even a "bare assertion . . . that the accused is believed to lack mental capacity." It speaks exactly to the contrary. We hold, therefore, that the law officer did not abuse his discretion in denying a psychiatric examination by military authorities. Having ruled properly on that part of the defense prayer for relief, it follows that the denial of the request for a continu-

ance until completion of the psychiatric examination was correct; in other words, there was no reason for a continuance.

Turning to another ruling by the law officer, the accused contends that one of his pretrial confessions was improperly admitted into evidence because he made it under a promise of immunity from prosecution. Briefly the claim is based on the following evidence. Some of the charges were pending against the accused on November 28, 1958. On that day he talked with his assistant defense counsel about the "possibility" of entering a plea of guilty to several of the charges. Counsel told the accused that if he entered a plea of guilty and agreed to testify as a prosecution witness in another case, one of the charges of larceny would be dropped and another would be reduced to wrongful appropriation. Counsel also informed the accused that if he pleaded guilty to the charges then pending, he "would not" be prosecuted for any offenses already committed but not yet charged. The defense counsel had "no absolute authority" to give these assurances to the accused. On December 3d the accused had an interview with office of Special Investigations agents. He was properly advised of his rights under Article 31, Uniform Code of Military Justice, 10 USC § 831. During the interview he "remembered that promise" of his counsel and it was that which made him "decide" to give the agents a statement. On cross-examination, he admitted he did not disclose to the agents his reason for making the statement. He also admitted he had furnished "the Japanese" with other statements in regard to the same general matter on November 30th. Before signing the statement, the accused told the agents his attorney would be "displeased" at him for making a statement because counsel had "advised . . . [him] that . . . [he] shouldn't sign any statements or make any oral or written statements." The law officer overruled defense counsel's objection to the admission of the statement for the reason there was no evidence that the Government had offered any "inducement to the accused."

83

There is no question but that the accused was advised of and fully understood his rights under Article 31, and that he acted freely and voluntarily in giving the statement. The latter fact is especially emphasized by his remark that he was acting contrary to his counsel's advice. The only issue is whether he was improperly induced to confess; and the only evidence of inducement consists of an earlier conversation between the accused and his lawyer which was not disclosed to the Government agents at the time the statement was made. Whether, with the possible exception of fraud, a private conversation between the accused and his lawyer can ever be the basis for the accused's repudiation of the legal consequences of his free and voluntary confession is not at all certain. See United States v Washington, 9 USCMA 589, 26 CMR 369. That question aside, there is no basis for a claim of unlawful inducement. Considered in the most favorable light for the accused, the evidence shows he confessed because he believed that if he entered a plea of guilty to the pending charges other probable charges would not be pressed. Since he "planned to plead guilty" at the trial, he decided he could ignore his lawyers advice and give the Government a pretrial confession of his guilt. For some undisclosed reason, the accused altered his plans, and at trial actually entered a plea of not guilty. Reduced to its simplest terms, the accused now wants to wipe out the past because he later changed his mind and his conduct. We can best answer that argument with the following lines from Edward Fitzgerald's translation of the *Rubaiyat of Omar Khayyam*:

"The Moving Finger writes; and, having writ Moves on: nor all your Piety nor Wit Shall lure it back to cancel half a Line, Nor all your Tears wash out a Word of it."

The record of trial contains no evidence which even suggests that the accused's confession was the product of anything but the accused's free and uninfluenced will. The law officer, therefore, was entirely correct in admitting his pretrial statement into evidence.

Finally, the accused contends the law officer committed prejudicial error by instructing the court-martial on the effect of "prima facie proof." The same instruction was considered in United States v Simpson, 10 USCMA 543, 28 CMR 109. For the reasons set out in the opinion in that case, we hold that the instruction is erroneous, but not prejudicial.

The decision of the board of review is affirmed.

Judge LATIMER concurs.

FERGUSON, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

I agree with the author of the principal opinion that the record offers a sufficient basis for the law officer's ruling admitting accused's confession in evidence. His counsel's instruction to him that he remain silent in order to protect himself and his belief that the attorney would be "mad" because he made a statement allows the inference that the promised immunity did not induce his admissions. Hence, it cannot be said that the law officer erred in overruling the objections made to receipt of this evidence.

However, I disassociate myself from the statement that it is "uncertain" whether a private conversation between the accused and his lawyer can *ever* be the basis for repudiation of the legal consequences of his confession. That issue is not now before us, and it is immediately apparent to me that a myriad of situations may exist wherein the private consultations of an attorney and his client might bear upon the voluntariness of his statements. I prefer for them to be presented to us before deciding the issue.

I have heretofore recorded my views concerning the vice inherent in instructing the members of the court-martial "In law, prima facie evidence of a

84

fact is sufficient to establish the fact, unless it is rebutted." See my separate opinions in United States v Simpson, 10 USCMA 543, 28 CMR 109, and United States v Adkins, 11 USCMA 9, 28 CMR 233. The contrary is now settled law, and there is little use in reiterating the concepts I have previously advanced. Accordingly, I join in the conclusion of my brothers that the instruction is not prejudicially erroneous and pass to the other issues presented by accused's appeal.

The accused was found guilty of four specifications of larceny, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921, and two specifications of housebreaking, in violation of Code, supra, Article 130, 10 USC § 930. He was sentenced to dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for ten years. The convening authority disapproved the findings of guilty of one specification of larceny on the basis of insufficiency of the evidence. He otherwise approved the findings and sentence. The board of review affirmed the findings but substantially reduced the period of confinement involved. Thereafter, we granted accused's petition for review on the question of whether the law officer should have admitted in evidence a confession obtained from him by Office of Special Investigations agents; whether a continuance should have been granted for the purpose of having accused examined by military psychiatrists; and the propriety of the instruction mentioned above on the effect of prima facie evidence. The author of the principal opinion and Judge Latimer agree that these questions must be resolved in favor of the Government. As I believe they misapprehend the situation presented with respect to the continuance issue, I am unable to join in the affirmance of the decision of the board of review.

On October 13, 1958, accused's defense counsel presented a request for a psychiatric evaluation of the accused to the convening authority's Director, Military Justice. He based his motion upon the accused's record of a disturbed life, commencing when he was eight years of age and extending to his commission of the present offenses. He pointed out that the accused had been almost continuously incarcerated in juvenile homes during his adolescent years. As a result of psychological testing and psychiatric examination in several of these institutions, mental therapy was prescribed and administered. The Director, Military Justice, apparently ruled on this motion and denied it on the basis that "there does not appear to be sufficient information to warrant a psychiatric evaluation at this time." The Director, however, pointed out to the defense counsel that a psychiatric evaluation will be granted if "you can produce any information which would indicate that the accused was incompetent at the time of the commission of the offense, or is now unable to cooperate in his defense." On December 5, 1958, the defense counsel again submitted his request for a psychiatric examination of the accused to the staff judge advocate "In accordance with your instructions" and the pertinent provisions of the Manual for Courts-Martial, United States, 1951. In support of his motion, he also submitted a psychologist's report, accomplished by the California Youth Authority in 1953, which set forth in graphic detail the sordid circumstances under which accused was reared. The report concluded that:

"At the present time there is no marked emotional pathology apparent nor any particular distortion of the rational processes. Rather, we see here an insecure lad who has never known the normal affection, supervision and guidance which an adequate home could have provided. His delinquency [arson] has been one way of rebelling against his felt insecurity and inadequacy and his sexually deviate behavior [with his six-year-old sister and other children] has been one way of immediately achieving a type of emotional and social satisfaction."

The reporting psychologist pointed out that the prognosis for accused's becoming a useful member of society was probable if he were afforded a full training course in a juvenile institution

and placed in a suitable foster home.

The staff judge advocate denied the defense request on the ground that there was no substantial basis for concluding that the accused was insane, and the accused was brought to trial on December 23, 1958. At the outset of the hearing, a motion for psychiatric examination was addressed to the law officer in closed session. It should be noted here that accused was being defended at the trial by another attorney, his former counsel having been released in order that he might return to the United States.

In addition to the psychiatric report of the California Youth Authority, the defense counsel adduced evidence to the effect that a check had been made with four Japanese clinics in an effort to determine whether they would be willing to examine the accused. Three refused absolutely, and the fourth agreed to undertake the task in return for a fee of approximately one hundred and fifty dollars, subject to the conditions that the psychiatrist not be required to testify in court and that his certificate not be compared with any other psychiatric examination. This doctor also pointed out the inherent difficulty in examining a patient when the doctor did not speak fluent English and the patient was not able to speak Japanese. The defense was unable to discover any American, British, or other English-speaking psychiatrist in the area outside personnel of the armed services. As cogently pointed out by the accused's counsel, "he is either going to get an examination from the military in Japan, or as it stands now, he won't get one at all." He also pointed out to the law officer that it was not the defense's contention that the accused was not mentally responsible or capable, but simply that counsel did not know his condition and desired to ascertain it.

I agree with the author of the principal opinion that we may pass the question whether the convening authority should have personally ruled on the defense's pretrial motion, for the same issue was presented before the law officer and preserved there for this Court's scrutiny. However, I believe the Chief Judge goes astray in treating counsel's

86

motion simply as one for further inquiry into the accused's mental condition. The record clearly demonstrates to me that counsel's purpose was to investigate the possibility of insanity as a defense or utilization of an up-to-date examination in mitigation and extenuation. Thus, it was obviously his purpose in adducing evidence of the lack of appropriate civilian psychiatric facilities in Japan to indicate to the law officer that he was forced to rely upon military medical authorities. Accordingly, the real issue facing the Court is whether the accused was deprived of an opportunity to prepare his case. It is clear to me that he was.

In United States v Frye, 8 USCMA 137, 23 CMR 361, we were faced with a somewhat similar situation. In that case, accused sought a continuance for the purpose of having a mental examination conducted by psychiatrists of a school of diagnosis different from those who had already tested him and found that he was both responsible and capable. The majority concluded that the law officer did not err in denying a delay in the trial for the stated purpose. Nevertheless, the Chief Judge ordered the board of review to conduct a further inquiry into accused's sanity in order to find whether accused could have possibly obtained evidence favorable to his cause from practitioners of different diagnostic beliefs. He pointed out that if the accused could produce evidence of a mental condition affecting his competency, he was entitled to a rehearing. Judge Latimer was of the opinion that the law officer did not abuse his discretion in denying continuance under the circumstances there presented but joined with the Chief Judge in order to effect a practical disposition of the cause. While I dissented on the basis that the accused was denied his right to perfect a possible defense, I need not rely solely on the arguments I made there in order to support my conclusion here, for I believe that even Judge Latimer's separate approach to the question demands reversal in this case. There, he pointed out that Frye had been examined by psychiatrists in Morocco and Germany and that these experts had been made avail-

able to counsel. Moreover, he had the opportunity to consult with other psychiatrists in Germany and to obtain their opinions. Finally, from the time of his appointment to the time of trial, he did nothing affirmative to develop leads for prospective testimony. Thus, he concluded that defense counsel did not exercise diligence in the case and found a substantial basis in the record for the law officer's denial of the continuance. In contrast, this case demonstrates that accused's counsel sought from the time of the pretrial investigation to have accused examined by competent experts. Frustrated in his efforts by the contrary view of the Director, Military Justice, and the staff judge advocate, he investigated the possibility of having the matter handled by Japanese doctors, three of whom declined outright and the fourth of whom imposed impossible conditions. An apparent effort was made to find other American or British psychiatrists. This, too, was singularly unsuccessful. We are then confronted with a situation in which counsel has done everything possible to investigate a possible defense but, because all parties were serving in a foreign country and military assistance was denied him, he was unable to complete his inquiry.

Moreover, I am quite unable to discern any basis in this record for denying counsel an opportunity to prepare his case. The principal opinion applies the rules set forth in the Manual, supra, regarding investigation of sanity by official agencies during the pretrial or trial proceedings. Certainly this Court has never held that a defense counsel serving overseas is bound by these procedural rules in investigating possible defenses, and I suggest that they were never intended as restrictions upon the use of military hospital facilities by an accused to whom no civilian agency is available.

In sum, then, I am convinced that the trial defense counsel in this case sought delay solely for the purpose of ferreting out a possible defense in the case. The psychiatric report's detailed history of accused's early childhood and his extremely poor record in the Air Force offered him some basis for that investigation. While it may have been insufficient to require a trial inquiry into accused's sanity, it is enough to remove any label of frivolity from his request. He demonstrated that he had worked diligently on the problem prior to the trial and that the only possible experts available to him were those employed in military hospitals. Under such circumstances, I am certain he was entitled to an order from the law officer directing that such facilities be made available and the necessary delay for their use. Thus, I would conclude that the law officer erred prejudicially in his denial of the defense motion.

I would reverse the decision of the board of review and authorize a rehearing.