UNITED STATES, Appellee

v

WALTER J. ODENWELLER, Airman Third Class, U. S. Air Force, Appellant

13 USCMA 71, 32 CMR 71

No. 15,633

May 11, 1962

*Major William A. Crawford, Jr.*, argued the cause for Appellant, Accused. With him on the brief was *Colonel Joseph E. Krysakowski.*

*Major James Taylor, Jr.*, argued the cause for Appellee, United States. With him on the brief was *Colonel Merlin W. Baker.*

Opinion of the Court

FERGUSON, Judge:

Accused was tried by a general court-martial, convened at Ent Air Force Base, Colorado, upon charges of absence without leave, in violation of Uniform Code of Military Justice, Article

72

86, 10 USC § 886, and seven specifications of larceny, in violation of Code, supra, Article 121, 10 USC § 921. He pleaded guilty to the charge of unauthorized absence and to the lesser offense of wrongful appropriation involved in each theft count. He was found guilty of absence without leave, five counts of larceny, and two counts of wrongful appropriation. A sentence to dishonorable discharge, forfeitures of all pay and allowances, confinement at hard labor for one year, and reduction to Airman Basic was imposed. Intermediate appellate authorities affirmed the findings and sentence, and we granted accused's petition for review on the issues:

"1. Whether the law officer shifted the burden of proof in instructing to disregard the confession if the court found that the accused requested but was denied counsel.

"2. Whether the law officer correctly and sufficiently answered the question of the court-martial president as to whether the court was privileged to make 'any recommendations other than a sentence in this case.'"

The first issue involves the question of the propriety of the law officer's instructions with respect to the court's consideration of a purported oral confession by the accused that he "stole" a pair of binoculars, a radio, an "Ike jacket," a pair of pants, a shirt, and a sweater. These are the items of property alleged to have been taken animo furandi, in specifications 1, 2, 3, and 5 of Charge II. Our consideration of the instructional question, therefore, bears only on these offenses, and our discussion of the evidence will be limited to the circumstances surrounding them.

From the record, it appears that the accused was suspected of complicity in a number of thefts which had occurred in his barracks. On June 8, 1961, while in pretrial confinement, he was interrogated by Sergeant Calvin Coolidge Moreland, an Air Police investigator. He was properly advised of his rights under Code, supra, Article 31, 10 USC § 831, and informed that he was suspected of larceny. In response to Sergeant Moreland's questioning, he orally confessed his guilt, as noted above. Thereafter, he reduced the oral confession to writing. According to Moreland, accused, while completing the written confession, stated that he "'would like to see a legal counsel.'" To the best of Moreland's knowledge, accused made this request "maybe two times." In response, Sergeant Moreland informed accused "that I would like for him to continue making the statement and that after the statement was made and I had finished my report, that I would forward it to my superiors." When asked whether he had ever done anything about obtaining counsel for accused, the investigator replied that his task "was to complete the report."

Testifying to the circumstances under which the oral and written statements were obtained, the accused declared that Sergeant Moreland first advised him of his rights under Code, supra, Article 31. He immediately "asked for legal counsel." Moreland replied that "he would get it as soon as possible but the soonest I could get it was right after I signed the statement. I said I would like to see legal counsel before I signed the statement and he said I couldn't do that." At this time, accused had made no oral or written statement to Moreland. As he then refused to make any statement, accused was returned to his cell.

A few hours later, Odenweller was again interrogated by Moreland. He testified that he once more requested counsel and "he still denied me it." Accused was told that "he wouldn't give it [access to counsel] to me unless I signed the statement." Accused stated that he finally complied with Moreland's condition, but did not see an attorney until several days later.

The law officer, considering the foregoing evidence, admitted the oral confession in evidence but excluded the written statement. In connection with the issue, he gave the following instructions:

"You are advised that my ruling receiving in evidence, at such time

**73**

as it is uttered, a certain out-of-court oral statement allegedly made by the accused with respect to the offenses of which he stands charged, my ruling is final only on the question of its admissibility. My ruling merely places the oral statement before the court; *it does not conclusively establish the voluntary nature of the statement*. Each of you in your deliberations upon the findings of guilt or innocence must come to your own conclusion as to the voluntary nature of the statement. If you determine the statement was involuntary, you must refuse to consider it as evidence. You may accept the statement as evidence only if you determine that it was voluntary. You are also advised that if you find the statement was voluntary, any evidence introduced as to the voluntary or involuntary nature of the oral statement may be considered by you in determining the weight that you will give to the oral statement.

"*Evidence has been presented which places in issue the question of whether during the interrogation of the accused he requested but was denied the opportunity of consulting with legal counsel. If you find that, under these circumstances, such request was made and denied, you must refuse to consider the oral statement as evidence in this case.*" [Emphasis supplied.]

The United States concedes that the conflict in the testimony of the accused and that of Sergeant Moreland raises an issue concerning whether accused was denied access to legal advice prior to the time he uttered his oral confession to the charges in question. We agree. See United States v Gunnels, 8 USCMA 130, 23 CMR 354; United States v Rose, 8 USCMA 441, 24 CMR 251; United States v Brown, 13 USCMA 14, 32 CMR 14. If true, the accused's contention alone may have been sufficient to invalidate the confession. United States v Gunnels, supra; United States v Rose, supra. And the question of the veracity of his claim was one ultimately for the court members. United States v Minnifield, 9 USCMA 373, 26 CMR 153; United States v Gorko, 12 USCMA 624, 31 CMR 210. Thus, it was incumbent upon the law officer to submit the question whether accused was denied access to counsel to the court-martial under proper instructions, in a manner similar to voluntariness. The inquiry which we make, therefore, is directed to an examination of his advice to the military jury in order to determine its accuracy.

It is settled military law that the United States has the burden affirmatively to establish the voluntariness of a confession as a predicate for its receipt in evidence and consideration by the fact finders. United States v Spero, 8 USCMA 110, 23 CMR 334; United States v Jones, 7 USCMA 623, 23 CMR 87; Manual for Courts-Martial, United States, 1951, paragraph 140a. Once an issue is raised, therefore, concerning the voluntariness of a confession, it must affirmatively overcome the evidence of involuntariness and present proof sufficient to convince the court members that accused's statement was in fact voluntarily made. United States v Jones, supra; Litkofsky v United States, 9 F2d 877, 880 (CA2d Cir) (1925). And we further believe that it must so persuade the members beyond a reasonable doubt. See separate concurring and dissenting opinion in United States v Sanchez, 11 USCMA 216, 29 CMR 32, at page 223.

Voluntariness, like trustworthiness, is a factual question. United States v Jones, supra. Once determined to be voluntary, a confession is deemed the highest order of proof. United States v Monge, 1 USCMA 95, 2 CMR 1. It is such an important factor in evidence that the basis for its consideration should be measured by the same standard applicable to other factual determinations in criminal cases, the establishment of which, indeed, so frequently depend upon its contents. And for this reason, the Federal courts have adopted the sound rule that the United States

74

must prove voluntariness beyond a reasonable doubt. Mora v United States, 190 F2d 749 (CA 5th Cir) (1951). There, Judge Rives, speaking for the court, declared, at page 752:

". . . We think that the district court properly admitted the confession in evidence, and then by its charge, left the jury free to reject the evidence *unless the jury believed beyond a reasonable doubt that it was made freely, voluntarily and without compulsion or inducement.*" [Emphasis supplied.]

The same principle was denominated "the correct rule" in Patterson v United States, 183 F2d 687 (CA 5th Cir) (1950), at page 690. We likewise conclude that voluntariness is required to be established beyond a reasonable doubt, and when that issue or one relating to denial of counsel is submitted to a military jury, it should be so informed. Indeed, we note the Department of the Army has for some time included such a requirement with regard to voluntariness in its model instructions. Appendix XXI, Department of the Army Pamphlet 27–9, Military Justice Handbook, The Law Officer, April 1958.

Turning to the advice regarding the confession, we point out that it nowhere made mention of the doctrine of reasonable doubt. More importantly, however, with respect specifically to accused's allegation that he was deprived of an opportunity to seek counsel, the law officer, at the time of admitting the confession and again at the conclusion of the trial, required that the members affirmatively "find that, . . . such request was made and denied" before rejecting the confession. In short, rather than requiring the United States to prove availability of counsel, the law officer imposed the need for the members to find a denial of the opportunity for consultation before they need refuse to consider the statement. Patterson v United States, supra.

Similar instructions with respect to other factual issues have been condemned by this Court. In United States v Burns, 2 USCMA 400, 9 CMR 30, the law officer advised the court members, that, " 'If in their own minds or a sufficient number of minds, they find the accused is insane, then there can be no finding of guilty.' " Of it, we said, at page 402:

". . . The test announced by the law officer could readily be misinterpreted to the detriment of the accused. The court-martial was told that if a certain number found the accused insane he could not be found guilty. But no mention is made of the burden and degree of proof. *The court-martial could have concluded the accused must establish his insanity to their satisfaction. Moreover, they could have assumed that he must establish it by a greater degree of proof than is necessary. The only duty we know which is imposed on the accused is that he produce sufficient evidence of insanity to place it in issue. If he does this, then the Government must prove sanity in the same manner and to the same degree as it does other issues.*" [Emphasis supplied.]

The decisions of the Court in United States v Smith, 11 USCMA 321, 29 CMR 137, and United States v Erb, 12 USCMA 524, 31 CMR 110, upon which the Government relies, may be distinguished. Unlike the record now before us, the instructions by the law officers in those cases were found by my brothers to have "stressed repeatedly that the burden was on the Government." United States v Smith, supra, at page 327. Here, however, the only advice dealing with the confession directly and specifically required an affirmative finding that counsel was denied accused. At no other place in the instructions are we able to find language which tends to correct the misapprehension which may fairly be said to have flowed from this unfortunate lapse. Compare Boatright v United States, 105 F2d 737 (CA 8th Cir) (1939), Drossos v United States, 2 F2d 538 (CA 8th Cir) (1924), and Patterson v United States, supra. Accordingly, we conclude that there is here a fair risk that the court members were left with the erroneous impression

**75**

that they must affirmatively find accused was denied counsel in order to reject his confession. As the proper principle requires the opportunity for consultation affirmatively to be established beyond a reasonable doubt, it is clear that the law officer's instruction in this regard was prejudicial.

In view of accused's voluntary and provident pleas of guilty to the lesser offense of wrongful appropriation under each specification affected by the instructional error, as well as his consistent testimony that he took the property involved but without the intent to steal, complete reversal is not required. United States v Dinsmore, 11 USCMA 28, 28 CMR 252. Nevertheless, we believe, under all the circumstances of this case, that justice to the accused requires at least a rehearing on the sentence. We need not, therefore, concern ourselves with the second issue which deals solely with a matter affecting sentence and which is unlikely to recur at another hearing. Cf. United States v Goodman, 12 USCMA 25, 30 CMR 25; United States v Oakley, 7 USCMA 733, 23 CMR 197.

The decision of the board of review is reversed and the record of trial is returned to The Judge Advocate General of the Air Force. The board of review may affirm findings of guilty of wrongful appropriation under specifications 1, 2, 3, and 5 of Charge II and order a rehearing on the sentence, or it may order a full rehearing on these charges and the penalty.

Judge KILDAY concurs.

QUINN, Chief Judge (dissenting):
Two reasons impel me to dissent. First, I doubt strongly the instruction is so wrong that there is a fair risk the court-martial was misled to the accused's prejudice. To advise the court-martial that the consequence of a particular finding of fact is acquittal or conviction, as the case may be, does not necessarily raise any question as to the burden of proof. See United States v Statham, 9 USCMA 200, 204, 25 CMR 462; United States v Mallow, 7 USCMA 116, 125, 21 CMR 242; cf. United

States v Noe, 7 USCMA 408, 22 CMR 198; United States v Rowan, 4 USCMA 430, 436, 16 CMR 4. In fact, it is not unusual for defense counsel, who presumably are alert to the dangers of shifting the burden of proof, to phrase requested instructions along the lines of the instruction used by the law officer. See United States v Smith, 11 USCMA 321, 29 CMR 137. Indeed, the challenged instruction is substantially similar to one recommended by the United States Supreme Court in Wilson v United States, 162 US 613, 624, 40 L ed 1090, 16 S Ct 895 (1896). In that case, the Supreme Court said that if the voluntariness of a confession is disputed, the members of the jury should be instructed to reject the confession "if upon the whole evidence, they are satisfied it was *not* the voluntary act of the defendant." (Emphasis supplied.) The instruction here is to the effect that if the court-martial finds "the request [for counsel] was made and denied" it must reject the pretrial statement. In my view, this language conveys the same idea expressed in the recommended instruction in the *Wilson* case. It amounts to a direction to the court-martial to reject the pretrial statement if it finds it is *not* voluntary because the accused was denied counsel. Nowhere in the instruction is the burden of proof mentioned; and nothing in it says the burden of proving involuntariness is on the accused. See United States v Noe, supra.

At trial, defense counsel apparently construed the instruction the same way I construe it. He made no objection and offered no change in the phraseology, although accorded several opportunities to do so. In any event, if I misconstrue the instruction, and misunderstand the meaning of defense counsel's failure to object, another reason compels me to disagree with my brothers.

Although the law officer has primary responsibility for instructing the court-martial correctly on material issues, counsel also have an obligation. They should call attention to errors or inadequacies, so the law officer can make appropriate changes. The failure

to discharge that obligation, when accorded the opportunity, may result in waiver of the defect as ground for reversal of an otherwise proper conviction. Of course, the rule of waiver is not inflexible; and at times this Court has refused to apply the rule to prevent manifest injustice to the accused. Generally, when the alleged error depends upon a particular construction of certain language, we have looked closely at the construction accorded the language by the parties at trial. For example, in United States v Johnson, 3 USCMA 447, 454, 13 CMR 3, we said: "[T]he accused's own evaluation of the instruction at the trial level may be considered in weighing its significance on appeal." In my opinion, the parties did not at trial consider the instruction to suffer from the serious infirmity my brothers find in it.

When the accused's pretrial statement was admitted into evidence, the law officer instructed the court on its responsibility as to voluntariness. He asked the court-martial if it had any question "as to the meaning and effect" of his instruction. Replying for the court, the president answered in the negative. Defense counsel made no objection and offered no request for modification. Later in the out-of-court discussion on the proposed final instructions, the law officer informed defense counsel the final instruction on voluntariness would be the same as the instruction given at the time the accused's pretrial statement was admitted into evidence. Defense counsel's comment was: "That's fine." Moreover, at the end of the instructions, defense counsel was given another opportunity to object or request other instructions; once more he had no request. Speaking of the effect of such trial actions on an appellate attack on the correctness of an ambiguous instruction, we said:

". . . Here again we are faced with an instruction which is attacked principally upon the ground that it lacks clarity and precision. On two occasions, the law officer interrogated defense counsel as to any objections they might have to the instructions given or as to their desires to submit additional requests. Each time, defense counsel responded there were no exceptions to be taken and no requests to be submitted. In line with our previous decisions, we hold that the defense having failed to request clarification or amplification cannot successfully question the instructions on these grounds on appeal." [United States v Kloh, 10 USCMA 329, 333, 27 CMR 403. See also United States v Miller, 8 USCMA 33, 23 CMR 257.]

In his second assignment of error, the accused contends he was prejudiced by the law officer's answer to a question asked by the president in regard to the sentence. Before the court-martial closed to deliberate on the sentence, the following occurred:

"LO: Are there any questions from the court?

"PRES: Yes, I would like to ask a question, please. Is the court privileged to make, in connection with the case at hand, any recommendations other than a sentence in this case?

"LO: The court's function here is solely the imposition of a sentence in accordance with the rules as I have outlined them to you; any administrative determination is not the concern of the court. Are there any further questions?"

Again we are asked to construe the meaning of words used, and acted upon, at the trial level. Appellate defense counsel contend the president's question indicates the court wanted to know if it could exercise its traditional right to recommend clemency. See United States v Doherty, 5 USCMA 287, 291, 17 CMR 287. Obviously, the law officer did not construe the question in that light. His reply indicates he believed the court-martial wanted to know if it could recommend some sort of administrative action, apart from its judicial act of imposing sentence. From that standpoint, the law officer was correct in advising the court-martial that it could not concern itself with "any administrative determination." See United States v Grcich, 10 USCMA 495, 28 CMR 61; United States v Jemison,

10 USCMA 472, 28 CMR 38. Since neither the president of the court nor the defense counsel objected to the law officer's construction of the nature of the president's question, it can hardly be argued at this level that they really thought the question related to the general right of the court-martial to recommend clemency.

The law officer's instructions very clearly spelled out the sentence power of the court-martial. The sentence work sheet, which was examined by defense counsel and submitted to the court without objection, indicated that among the permissible punishments the court could impose were such minor penalties as detention of pay and admonition. Yet, the court imposed a sentence extending to dishonorable discharge and confinement at hard labor for one year. In light of its action, there is no possibility the court would not have imposed any sentence if it had been informed of the right to recommend clemency. Cf. United States v Samuels, 10 USCMA 206, 27 CMR 280. Consequently, even if the law officer misconstrued the president's question, the accused was not prejudiced. In addition, the post-trial review carefully considered all the circumstances, including the advisability of extending clemency. There is, therefore, no reasonable basis from which to conclude the accused was prejudiced by the law officer's answer to the president's question.

I would affirm the decision of the board of review.