UNITED STATES, Appellee

v

JOSEPH R. PETTY, Ship's Serviceman Seaman, U. S. Navy, Appellant

13 USCMA 398, 32 CMR 398

No. 16,018

December 21, 1962

*Major Frederick D. Clements,* USMC, argued the cause for Appellant, Accused.

*Major Elvin R. Coon, Jr.,* USMC, argued the cause for Appellee, United States.

## Opinion of the Court

QUINN, Chief Judge:

A general court-martial convicted the accused of burglary and assault with intent to commit rape, in violation of Articles 129 and 134, respectively, Uniform Code of Military Justice, 10 USC §§ 929 and 934. The findings of guilty and the sentence, which includes a bad-conduct discharge and confinement at hard labor for two years, were affirmed on intermediate appellate review. We granted further review to consider two questions relating to the admission in evidence of a pretrial statement by the accused and the adequacy of the post-trial review by the staff legal officer.

In the first assignment of error the accused contends his pretrial statement was inadmissible as a matter of law because it was made after he asked for, but was deprived of, the opportunity to consult with a lawyer during interrogation by law enforcement agents. See United States v Gunnels, 8 USCMA 130, 23 CMR 354. At an out-of-court hearing on the issue, the accused and other witnesses testified to the circumstances of the reference to counsel.

About 6:30 a. m. on August 11, 1961, two investigators of the Security Office at the Newport Naval Base in Rhode Island took the accused into custody. Preliminary to placing him in a "holding" cell at the Security Office, they asked the accused to take everything from his pockets and to remove his

**399**

shoestrings and belt. The accused asked "'For what?'" He was then informed he was being held as a suspect. At that point, the Government's version of the conversation and that of the defense diverge. The accused testified that he said: "'If you're going to hold me, I'd like to call DesLant [Destroyer Atlantic (Command)] to speak to Lieutenant Canning there, who is a law officer.'" He said he was told to "shut up," and that if he needed counsel he'd "get one in due time." According to J. E. Church, one of the Security Agents, the accused remarked, in language which the witness could not recall "exactly" but which he regarded as "a threat," that he was going to call the Destroyer Atlantic Command Legal Officer. Church replied, "Go ahead," but the accused made no effort to do so, although there were four telephones on desks in the room. Church further stated that had the accused asked permission to call a lawyer, he would have granted such request because he had "no right to deny" it.

The accused also testified that besides speaking to Church about getting counsel, he talked to Torrence, a "buddy" who accompanied him to the Security Office. This conversation took place as Torrence "got ready to leave" the office. However, Torrence was not produced as a witness, although the accused said Torrence was in a "position to go get the person I asked for." A bystander in the Security Office, Jerry L. Osborne, was called as a defense witness. He testified the accused asked "if he could use the telephone" to call Destroyer Atlantic Command, but was told "not to worry about it; they'd take care of it."

For fourteen or fifteen hours after he was placed in the detention cell no one questioned the accused. At about 10:30 p. m., however, he was taken to the Office of Naval Intelligence and introduced to two agents who, after advising the accused of his rights under Article 31 of the Uniform Code, 10 USC § 831, interrogated him about the alleged offenses. The agents testified, and the accused admitted, he did not ask for a lawyer at any time during the interrogation. One of the agents testified that if the accused had asked for a lawyer he "would have terminated the interrogation at that point" to give the accused "every opportunity to obtain counsel." At this meeting the accused made an oral statement, which he later personally reduced to writing. It is this writing which the accused contends is inadmissible as a matter of law because he was deprived of the opportunity to consult counsel during the interrogation.

Considering the Office of Naval Intelligence interrogation by itself, the accused's own testimony shows no request for, and no denial of, the opportunity to consult counsel. The question then is whether the accused's earlier conversation with Church led him to believe it was futile to repeat the request to the agents. Although generally voluble in his testimony, on this critical issue the accused remained eloquently silent. We have pointed out that denial of a request to consult counsel, which is made an appreciable period before interrogation, will not bar the admission into evidence of a statement made during the interrogation, if the denial is not "tied" to the statement. United States v Cadman, 10 USCMA 222, 27 CMR 296. See also United States v Dutcher, 7 USCMA 439, 22 CMR 229, concurring opinions.

Whether our holding in the *Cadman* case is itself sufficient to justify the law officer's ruling here need not detain us. In the light most favorable to the accused, the evidence shows a conflict as to whether a request to consult counsel was actually made. If the law officer believed Church, the accused made no such request. On the other hand, if he believed the request was made and denied, he could still conclude that at least a question of fact was presented, as to whether the denial "tainted" the statement made in the later interrogation. The determination of this question depended upon a number of factors, such as the interval of time between the Security Office incident, and the interrogation at which the statement was made; the accused's conversation with his "buddy"

Torrence, who was admittedly in a "position to go get the person . . . [the accused] asked for"; and the accused's admission that he did not ask for counsel during the interrogation itself; as a question of fact, the matter was one for the court-martial's consideration. See United States v Wheaton, 9 USCMA 257, 26 CMR 37; United States v Hogan, 9 USCMA 365, 26 CMR 145. Thus, there is ample evidence to support the law officer's ruling admitting the pretrial statement in evidence.

Passing from the ruling on admissibility, to the instructions on the court-martial's consideration of the statement, the accused contends the law officer erred by failing properly to frame the issue. See United States v Odenweller, 13 USCMA 71, 74, 32 CMR 71. The instructions made no mention of the effect of the denial of a request for an opportunity to consult counsel during the interrogation. There was, however, good reason for the omission.

Defense counsel specifically requested that his objection to the admission of the pretrial statement be considered on two different grounds: (1) Denial of the opportunity to consult counsel during interrogation, and (2) involuntariness based on other circumstances. Each ground was, at defense counsel's request, separately considered in an out-of-court hearing. The separateness of the two grounds of the objection was observed to such an extent that, during the taking of testimony on the denial of consultation ground, trial counsel was, because of defense counsel's objection, prevented from cross-examining the accused on whether he had "a chance to get some sleep" between his confinement and the interrogation. Later when court reconvened and the statement was offered in evidence, defense counsel repeated his objection to the admission of the statement. That he considered, and intended, this in-court objection to go only to the second of the two grounds he advanced in the out-of-court hearing, i.e., voluntariness, is manifest from the following circumstances:

(1) When, in the out-of-court hearing the law officer indicated he

intended to rule in favor of admissibility, trial counsel raised a question as to "the procedure" to be followed on "return to open court." Defense counsel stated that at that time "it will be the wish of the defense to adduce the evidence for the benefit of the court on the question of voluntariness." [Emphasis supplied.]

(2) In the in-court proceedings defense counsel initially objected to admission of the statement on both grounds advanced in the out-of-court hearing. However, after a bench conference with the law officer and trial counsel, defense counsel restated the objection as follows:

"The defense will object to the receiving of that exhibit on the ground that it was not made voluntarily by Petty. The defense does not waive the objection that was made at the out-of-court hearing."

(3) Although defense counsel examined the accused at length in connection with the limited objection interposed in the in-court hearing, he asked only one question which elicited testimony regarding the purported request for, and denial of, counsel. It clearly appears that this question was not designed to put the counsel request before the court members, but merely to present the background for the claim of involuntariness. Thus, defense counsel began his examination of the accused by eliciting testimony to the effect that the accused had only about an hour and a half of sleep before he was awakened by Torrence and informed that "some men were there to see" him. Then counsel drew from the accused testimony that when he arrived at the Security Office he was "still under the influence of alcohol" and "still tired"; and that he did what Church told him to do. The examination continued as follows:

"Q. Then what did you do?
"A. Well, I asked him what was it all about, and he told me it was not for me to ask questions, that I just answer questions. He said, 'We're going to lock you up.' So I said to him, 'If you're going to hold

me, I'd like to call Deslant and speak to Lieutenant Canning. He's a lawyer down there.' He said for me to shut up, that things would be taken care of, that if I wanted a counsel, they would get me one.

"Q. Then what happened?

"A. They put me in the holding cell.

"Q. What time was that?

"A. Between 8:00 and 8:15.

"Q. What was your condition at that time?

"A. I was tired and still under the influence.

. . . . .

"Q. How long were you in there?

"A. Until after supper. It was after 1800.

. . . . .

"Q. And what happened at 1800?

"A. Well, they came over and said that I was getting out of there. When I walked out, they said, 'Back this way,' and they took me back to the brig.

"Q. What was your condition at that time?

"A. I was drowsy, and by my drinking water, it made me worse.

. . . . .

"Q. What was your condition when they woke you at 2130?

"A. Well, sir, I was tired and drowsy and wanted some sleep."

(4) Osborne, the witness who had been called in the out-of-court hearing to corroborate the accused on the counsel issue, was not called to testify in the open court proceedings.

(5) In the out-of-court hearing, defense counsel's examination of Church went into the request for counsel. However, the in-court cross-examination of Church was directed only to the accused's physical condition at the time.

(6) A copy of the instructions was given to defense counsel in an out-of-court hearing. Specific attention was called to the instruction on voluntariness. No objection was interposed by defense counsel.

(7) In his final arguments, which included rebuttal to trial counsel's closing remarks, defense counsel said nothing whatever about accused's request for an opportunity to consult counsel. But he reviewed at length the evidence relating to the circumstances which tended to show the statement was involuntary.

The circumstances set out above indicate clearly that while defense counsel presented two grounds of objection to the law officer in the out-of-court hearing, he elected to submit to the court members in open court only the question of voluntariness. The law officer, therefore, did not err by omitting the counsel issue from his instructions. Speaking of a similar omission, where the accused had divided the grounds of objection between the law officer in an out-of-court hearing and the court-martial in the in-court proceedings, we said:

"Ordinarily, all evidence concerning a particular issue should be considered as a whole to determine its legal effect. United States v Redenius, 4 USCMA 161, 15 CMR 161. It is, of course, possible to raise several objections to the admissibility of a confession. Some of the grounds may be presented to the law officer in an out-of-court hearing, and others may be presented to the court members. The division may be founded upon the accused's desire to keep evidence material to the issue of voluntariness, but of possible disadvantage to him, away from the court members. However, . . . [accused] now desires to convert his own maneuver to avoid harm into prejudicial error. This we cannot permit.

"The inescapable fact is that the issue of the voluntariness of the confession was made before the law officer and not the court-martial. Consequently, no instruction to the court-martial on that point was required. United States v Davis, 2 USCMA 505, 10 CMR 3. And if no instruction was required, the accused could not have been harmed by any inaccuracy in the one that was given." [United States v Dicario, 8 USCMA 353, 359, 360, 24 CMR 163.]

In his final assignment of error, the

accused contends the staff legal officer's review misled the convening authority on a critical point. The review makes no reference to Osborne's testimony, which may be construed as corroborating the accused's version of his conversation with Church. Even considering Osborne's testimony, the convening authority might have concluded that the incident in the Security Office did not taint the later interrogation, and the admissibility of the accused's statement. But he could also make contrary findings of fact and, therefore, reach a contrary conclusion to that of the law officer and the court-martial. See United States v Alaniz, 9 USCMA 533, 26 CMR 313. In this circumstance we agree with dissenting board of review Member Tyson that the omission is fatal to the post-trial review. United States v Fields, 9 USCMA 70, 25 CMR 332; cf. United States v Bennie, 10 USCMA 159, 27 CMR 233.

The decision of the board of review is reversed, and the action of the convening authority is set aside. The record of trial is returned to The Judge Advocate General of the Navy for submission to a competent reviewing authority for further proceedings under Articles 61 and 64, Uniform Code of Military Justice, 10 USC §§ 861 and 864.

Judge KILDAY concurs.

FERGUSON, Judge (dissenting):

I dissent.

Contrary to the assertion of the majority, I find more than a passing reference to the request for counsel in the evidence adduced in open court regarding the question of the members' consideration of the confession. Indeed, the prosecution saw fit to call a witness who rebutted such proof on part of the defense. Thus, scrutiny of the record indicates the following testimony by the accused before the fact finders:

"A. Then this investigator, Church, came into the head and told me to come into the chief's office. So when I walked in there, he said, 'Take everything our [sic] of your pockets. Take your belt off and your shoe strings and put them on the desk.'

"Q. And did you?
"A. Yes, sir.
"Q. Then what did you do?
"A. Well, I asked him what was it all about, and he told me it was not for me to ask questions, that I just answer questions. He said, 'We're going to lock you up.' So I said to him, 'If you're going to hold me, I'd like to call Deslant and speak to Lieutenant Canning. He's a lawyer down there.' He said for me to shut up, that things would be taken care of, that if I wanted a counsel, they would get me one." [Emphasis supplied.]

In rebuttal, the prosecution recalled Church, whose testimony had already been taken in the out-of-court hearing, and adduced the following concerning accused's request for counsel:

"Q. At the time you removed his personal articles from him, was there any discussion about his calling an attorney?
"A. No, there wasn't any request. I can't give his exact words, but I know it was in the form of a threat. He said, 'I'll call the DesLant Legal Office,' or something to that effect.
"Q. What did you say when he said that?
"A. I told him, 'Go ahead.'
"Q. Was there any phone near him at that time?
"A. Yes, sir. There were three phones on the chief's desk, one connected with the Fire Department, one connected with the Marine Corporal of the Guard, and one outside the Base.
"Q. Would you have taken any steps to prevent him from using those phones?
"A. No, sir, I wouldn't.
"Q. Did Petty choose to use those phones?
"A. No, sir, he didn't.

"TRIAL COUNSEL: I have no other questions." [Emphasis supplied.]

While it is true that the defense counsel sought, for purposes of clarity,

**403**

to separate the issues of voluntariness and denial of counsel in the closed session discussion, it is clear to me that he also wished the matter to be presented to the fact finders. Thus, prior to presentation of testimony quoted supra, and upon the offer of accused's confession in evidence, he noted that the defense "has previously entered objection to the admission of this document on two grounds, which objections we reiterate." And when the law officer pointed out that these objections were not before the court, counsel made the following statement:

"DEFENSE COUNSEL: Well, in that case the *defense will interpose its objection on the grounds that Petty was denied his right to counsel —.*" [Emphasis supplied.]

In an in-court conference which followed, the law officer stated that the court members "are going to have to resolve the issue of voluntariness" and that such issue was not then before them. Thereafter, the conference was terminated and defense counsel proceeded to present testimony on the question.

In United States v Brown, 13 USCMA 14, 32 CMR 14, Judge Kilday declared, on behalf of a unanimous Court:

"The law is clear under the cases previously cited that when an accused or suspect requests such information it is error to misadvise him of his right to consult with an attorney and 'force him to submit to questioning . . . without a lawyer.' *Gunnels,* supra, at page 135. If the accused seeks to exercise his right to consult with counsel during interrogation he must be afforded the opportunity to do so."

In my opinion, the foregoing evidence presented in open court effectively raised an issue concerning the denial of accused's right to seek advice from an attorney who, in fact, subsequently represented him at the Article 32 investigation. Where such an issue is raised and evidence is presented thereon to the fact finders, it must be meaningfully submitted to them by the law officer's instructions. Thus, in United States v Odenweller, 13 USCMA 71, 32 CMR 71, we stated, at page 74:

". . . If true, the accused's contention [concerning denial of counsel] alone may have been sufficient to invalidate the confession. United States v Gunnels, supra; United States v Rose, supra. And the questions of the veracity of his claim was one ultimately for the court members. United States v Minnifield, 9 USCMA 373, 26 CMR 153; United States v Gorko, 12 USCMA 624, 31 CMR 210. Thus, it was incumbent upon the law officer to submit the question whether accused was denied access to counsel to the court-martial under proper instructions, in a manner similar to voluntariness."

In the instant case, there were no such instructions.

In light of these matters, I cannot agree that the issue was not raised in open court and that it was not counsel's intention to go beyond the interlocutory decision of the law officer and appeal to the fact finders. True it is that he did not see fit again to present the testimony of Osborne, his supporting witness, to the members of the court-martial, but he did adduce some evidence to show a denial to accused of the right to consult with Lieutenant Canning. Such was sufficient to raise the issue, and, as the law officer did not mention the subject in his instructions, I am required to conclude that a rehearing should be ordered. United States v Odenweller, supra.

I would reverse the decision of the board of review and order a rehearing.