UNITED STATES, Appellee

v

ROBERT MEWBORN, Private, U. S. Army, Appellant

17 USCMA 431, 38 CMR 229

No. 20,453

March 8, 1968

*Captain Kenneth J. Stuart* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent, Lieutenant Colonel Martin S. Drucker,* and *Major David J. Passamaneck.*

*Captain Harvey L. Anderson* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel David Rarick* and *Major John F. Webb, Jr.*

## Opinion of the Court

QUINN, Chief Judge:

A general court-martial convicted the accused of burglary and indecent assault, in violation of Articles 129 and 134, Uniform Code of Military Justice, 10 USC §§ 929 and 934, respectively. On this appeal, he contends he was prejudiced by a ruling of the law officer admitting in evidence testimony by the victim, which identified him as the person who broke into her room at the WAC Barracks, Fort Bragg, North Carolina, and assaulted her.

About 1:30 a.m., July 15, 1966, the victim was awakened from her sleep. She discovered a man in bed with her. She began to struggle with him, and he repeatedly told her to "be quiet," as he tried to kiss her. She continued to

432

struggle and the man fell off the bed. The victim screamed. Her screams attracted another WAC to the room. When she entered, the intruder fled. In the investigation of the incident, a pair of low-quarter shoes was discovered in the victim's room. The name "Winston Mewborn" and a service serial number were found inside. It was determined that Winston Mewborn was stationed at Fort Bragg. He was called to the Military Police office. After advice as to his rights under Article 31, Uniform Code of Military Justice, 10 USC § 831, and of his right to counsel, Winston admitted the shoes were his, but maintained that about two weeks earlier he had given them to his brother, the accused, who was also stationed at Fort Bragg.

The accused was called to the Military Police office. Advised of his rights under Article 31 and his right to counsel, he elected to speak. He admitted he had received the shoes from his brother, but contended they had been stolen from him. He, his brother, and six others formed two separate lineups for the purpose of allowing the victim to view each man. At the first, the victim merely paused in front of each man and looked at him. At the second, with the men in different positions, she stood in front of each while he uttered the words "be quiet" three times and exhibited his hands for her inspection. The victim "positively identified" the accused as the person who had assaulted her.

At trial, when trial counsel announced the victim as the Government's first witness, defense counsel requested an out-of-court hearing to determine the admissibility of her anticipated testimony identifying the accused as her assailant.

He contended her identification was based "solely" on the voice identification she had made in the lineup, and that that identification was improper because of "a denial of right to counsel." The request was granted. In the out-of-court hearing, defense counsel changed the ground of his objection. Asked by the law officer to forego "generalities" and cite "chapter and verse" of the "rights" allegedly violated, defense counsel referred to accused's right under Article 31(a) not to be "compelled to do things or to say things which will incriminate him." He also cited United States v Greer, 3 USCMA 576, 13 CMR 132, which deals with the application of Article 31 to a request for voice utterance for identification. However, testimony as to whether and when the accused was informed of his right to consult a lawyer was adduced during the hearing and defense counsel later reasserted that the accused's right to counsel was "in issue." It is, therefore, fair to conclude that the defense objection was predicated both upon an alleged violation of Article 31 and a denial of the right to counsel.

Two persons testified at the out-of-court hearing on the defense objection. One was Agent Samuel D. Kety, the other was the accused. They agreed that the accused was called to the Criminal Investigations Detachment office for questioning. They further agreed that Agent Kety identified himself as a CID agent, and read Article 31 to the accused. Finally, they agreed the accused told Kety he understood "what he was talking about" when he informed the accused of his rights at the interrogation. They disagreed as to what Kety said. The major points of difference are as follows:

| Kety | Accused |
|---|---|
| I. In addition to reading Article 31 to the accused, Kety testified he informed the accused of the following: (a) That he was suspected of burglary and indecent assault, and, (b), that he did not have to "make, say or do anything, and that anything he did make say or do could be used in a trial by court-martial against him." | I. Kety told him only that his brother was accused of indecent assault and burglary. Kety also asked him whether he knew his brother was "in a bind" and he was "the only one that can help him." |

II. As part of his preliminary advice, he told the accused he could have the "service of an attorney then and there" and that he "could go downtown and hire one" or "military counsel" would be provided for him. The accused said he did not want counsel.

II. Kety did not advise him of his right to a lawyer at the beginning of the interview.

III. After the lineup, the accused went to dinner. When he returned to the office he was again advised of his rights under Article 31 and of his right to counsel. At that time he said he wanted a lawyer. The interview was immediately terminated and the accused was returned to his company. His company commander was informed of his request for counsel. There was no further interrogation.

III. Kety did not tell him he had a right to a lawyer until he had returned to the office after dinner.

At the outset, it is appropriate to note that the interrogation and the lineup were not separate and distinct incidents, but part of a single custodial confrontation. United States v White, 17 USCMA 211, 38 CMR 9. Consequently, we need not consider the effect of the failure by Agent Kety to inform the accused of his right to counsel before he asked him to participate in the lineup as required by United States v Wade, 388 US 218, 18 L ed 2d 1149, 87 S Ct 1926 (1967).[1] Also, we put aside the holding in Wade that requiring an individual suspected of an offense to utter words or phrases for the purpose of voice identification does not violate his constitutional right against self-incrimination. Id., 388 US 218, at page 222. We examined that matter █ in United States v Greer, supra, and determined that, under the broader protections accorded an accused by Article 31 of the Uniform Code, he could not be compelled to speak for voice identification. We are not persuaded this construction of Article 31 was erroneous; and we adhere to the view that, under Article 31, before an accused is asked to speak for voice identification he must first be informed he has the right to say noth-ing. See United States v White, supra; United States v Wimberley, 16 USCMA 3, 10, 36 CMR 159. It is apparent that the admissibility ruling challenged by the accused must stand or fall on the adequacy of the advice given the accused at the beginning of the interview with Agent Kety. In White, supra, at page 218, we said: "If, at the beginning of a period of interrogation, the accused is fully informed of, and understands, his rights under Article 31, he need not be separately advised, as to each 'particular item of evidence,' that anything he says or does in regard thereto may be used against him in a court-martial trial."

The accused's testimony discloses several material points of conflict with Agent Kety. Perhaps most important is the conflict between the two in regard to whether, at the beginning of the interview, the accused was or was not informed of his right to counsel. In determining whether an █ accused has been denied █ a constitutional right, we are not precluded by the trial ruling from reexamining the evidence, but we must bear in mind that the demeanor of a witness at trial may have affected his credibility. See United States v Griffin, 17 USCMA 387,

[1] Appellate defense counsel concede that the ruling of the Supreme Court of the United States as to the right to counsel at a lineup does not have retroactive application to the accused's trial. Stovall v Denno, 388 US 293, 18 L ed 2d 1199, 87 S Ct 1967 (1967).

434

38 CMR 185. In addition, a number of circumstances tend to support Kety's testimony and to discredit the accused's. The accused admitted that, after dinner, Kety informed him of his right to counsel when he again advised him of his rights under Article 31; he also admitted that Kety terminated the interview when he requested counsel. Kety's conduct on this occasion tends to support his contention that he advised the accused as to his right to counsel when he first informed the accused of his rights during the interrogation. Kety's contention is further supported by his testimony that in his earlier advice to Winston Mewborn he had referred to the right to counsel. The account of Winston's interview strengthens his testimony that he "always" explained to an accused "that military counsel would be appointed for him." We are satisfied the law officer was justified in resolving the conflicts in testimony against the accused. We turn, therefore, to the content of Agent Kety's advice to determine whether it is legally sufficient.

Kety's testimony demonstrates he satisfied all the requirements of Article 31. He read the Article to the accused and informed him of the offenses of which he was suspected; he also advised the accused he did not have to do, say, or make anything, but if he did, whatever he made, said, or did could be used against him in a court-martial. Since the case was tried after the determination by the Supreme Court of the United States that custodial interrogation was a critical confrontation between the accused and the Government, he was also required to advise the accused he had a right to counsel. United States v Tempia, 16 USCMA 629, 37 CMR 249.[2]

As explicated by the Supreme Court, the formula of advice as to the right to counsel during custodial interrogation must make known to the person to be questioned that "he is entitled to a lawyer and that if he cannot afford one, a lawyer will be provided for him prior to any interrogation"; and, further, that he is entitled to the lawyer's presence during the interrogation. Miranda v Arizona, 384 US 436, 444, 474, 16 L ed 2d 694, 86 S Ct 1602 (1966). An advice which does not contain the substance of the formula is inadequate. United States v Pearson, 17 USCMA 204, 37 CMR 468. Specific words or phrases, however, need not be used. In other words, it is not the format, but the substance of the advice that matters. United States v White, supra, at page 215. Matching Kety's testimony against the requirements of *Miranda*, the following appears:

| Miranda | Kety |
|---|---|
| I. That the accused has a right to counsel. | I. He informed the accused he could have "the service of an attorney." |
| II. That if he cannot afford to pay for a lawyer one would be appointed for him. | II. He advised the accused he "could go downtown and hire" a lawyer or "military counsel" would be provided for him. |
| III. That he is entitled to the presence of the attorney prior to any interrogation. | III. He informed the accused he could have an attorney "then and there." |

[2] Statements by the accused, other than his utterances at the lineup, were also received in evidence. This circumstance makes it unnecessary to consider whether, in view of United States v Wade, 388 US 218, 18 L ed 2d 1149, 87 S Ct 1926 (1967), an accused is entitled to advice as to his right to counsel, when he is asked to speak for voice identification at other than a lineup. See United States v Wimberley, 16 USCMA 3, 36 CMR 159; United States v Rushing, 17 USCMA 298, 38 CMR 96.

Kety's testimony clearly demonstrates that points I and II of the *Miranda* requirements ██ were satisfied. As to point III, Kety did not use the language of *Miranda's* formulation, but the words he did use can fairly be interpreted as indicating the accused was entitled to the presence of counsel prior to interrogation. Even appellate defense counsel's criticism of Kety's language is only that it was "awkward." So long as they convey the substantive concept required by law, the technical ineptness of words does not vitiate their legal effect. See *United States v Smith*, 8 USCMA 582, 25 CMR 86. We conclude, therefore, that Kety's advice satisfied the requirements of *Miranda*.

At trial, both at the beginning and at the conclusion of the out-of-court hearing, defense counsel informed the law officer he wanted the issue of voluntariness decided only by him, and he did not intend to resubmit the matter to the court members. The law officer reminded defense counsel there were "issues of fact" involved which the accused could bring "before the court," but counsel insisted it was the defense "desire" that the law officer exclusively and finally decide the issues. Satisfying himself counsel understood that his ruling would "resolve issues of fact," the law officer ruled the accused's statements were admissible.

Appellate defense counsel contend the law officer used an erroneous standard in ruling on the sufficiency of the evidence to establish the nature and extent of the advice given the accused. They maintain he based his findings upon "a mere preponderance of the evidence," whereas he should have determined them by reference to the standard of proof beyond a reasonable doubt. The record does not indicate what standard the law officer used.

Where the record of trial indicates a ruling may have been made on the basis of a mistaken notion ██ as to the applicable law, reversal of the ruling is appropriate. *United States v Berry*, 6 USCMA 609, 20 CMR 325. Appellate defense counsel contend that since *Jackson v Denno*, 378 US 368, 12 L ed 2d 908, 84 S Ct 1774 (1964), the correct rule is that the evidence must demonstrate voluntariness beyond a reasonable doubt, whether the determination is made by the judge or by the jury. See *People v Huntley*, 15 NY 2d 72, 204 NE 2d 179 (1965); *United States v Inman*, 352 F 2d 954 (CA 4th Cir) (1965); *Pea v United States*, —— F 2d —— (CA DC Cir), December 20, 1967, issue pending en banc determination. From that premise, they argue the law officer did not apply that standard because he was probably guided by the Manual provision to the effect that, in ruling on an interlocutory issue, "questions of fact are determined by a preponderance of the evidence." Manual for Courts-Martial, United States, 1951, paragraph 57*g*. The argument overlooks the effect of our decision in *United States v Odenweller*, 13 USCMA 71, 32 CMR 71, which was published years before this case was tried. There, we held the Government not only had the burden to establish affirmatively the voluntariness of a confession as a predicate for its receipt in evidence, but that the burden required that voluntariness "be established beyond a reasonable doubt." *Id.*, at page 76.

The record of trial provides no basis for assuming the law officer was unaware of the *Odenweller* rule. On the contrary, the care he took to assure himself that defense counsel understood he was to rule finally on the "issues of fact," convinces me he did not rule on voluntariness as a mere interlocutory matter, but as a trier of the facts deciding a question of fact. I find nothing, therefore, to justify the conclusion that the ruling was based upon an erroneous principle of law, assuming that in these circumstances the law officer is bound by the reasonable doubt standard. See *Pea v United States*, supra.

My brothers, however, go further and reject outright the contention that

the standard of reasonable doubt applies. They view the question of admissibility as separate from the ultimate factual questions of voluntariness or adequacy of the required threshold warnings. In their opinion, the law officer does not sit as a judge trying a case without a jury, and his findings of fact deal only with the admissibility of the statement. Consequently, his ruling on this issue, like other evidentiary rulings, need only be supported by a preponderance of the evidence. Manual for Courts-Martial, supra, paragraph 57g. Further, they construe the cases in which the reasonable doubt rule is followed as based on local law requiring the trial judge to rule finally on the statement, with only the question of its credibility left to the jury. See State v Keiser, 274 Minn 265, 143 NW 2d 75 (1966). They conclude that the law officer here ruled on the statement merely as an evidentiary matter; and when the accused did not renew his challenge in open court, no question was presented for the court-martial's consideration. United States v Odenweller, supra.

The decision of the board of review is affirmed.

Judges FERGUSON and KILDAY concur.