UNITED STATES, Appellee

v

THOMAS J. SCOTT, Private U. S. Army, Appellant

No. 27,003

November 23, 1973

Not reported below.

*Captain John Howard Shows* argued the cause for Appellant, Accused. With him on the brief were *Colonel Arnold I. Melnick* and *Captain Howard M. Schmeltzer.*

*Captain Richard A. Karre* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Major Thomas P. Burns, III, Captain M. Douglas Deitchler, Captain Richard L. Menson,* and *Captain James F. Clark.*

## OPINION OF THE COURT

Quinn, Judge:

As a result of modification by the Army Court of Military Review of the findings of guilty of a general court-martial at Fort Bliss, Texas, the accused stands convicted of larceny of a government-owned TV set. At trial, he challenged, on several grounds, the admissibility of an oral pretrial statement by him in which he admitted he had removed the TV set from a ward at Beaumont General Hospital, where he was then a patient. The trial judge ruled against him. We granted review to consider "whether the warning imparted by the investigator prior to obtaining accused's statement satisfied the requirements of Miranda v Arizona, 384 US 436 (1966)."

At the hearing on a defense motion to suppress the pretrial statement, Wall, a "detective investigator" at Beaumont General Hospital, testified that on the day of the disappearance of the TV set, he interviewed the accused. At the beginning of the interview, he identified himself as an investigator and informed the accused he was suspected of larceny of the set. He then advised the accused of his rights, which he enumerated as follows:

"Your rights are: You have the right to remain silent. Any statement you make may be used as evidence against you in a criminal trial. You have the right to have counsel present with you during questioning. You may have military counsel of your own selection if he is available or you may have civilian counsel for which you will have to pay. *You may have a military counsel appointed for you at no expense to you.* Also, at any time during the interview if you decide to stop answering questions you may do so. Also at any time during the interview if you desire legal counsel, just say so." (Emphasis added.)

After the advice as to his rights, the accused indicated that he desired counsel. Wall escorted him to Captain Phillips, the hospital judge advocate. Captain Phillips conferred with the accused in his private office, while Wall remained in the waiting room. Phillips determined that he could not advise the accused because of "a conflict of interest," and he suggested to him, and later to Wall, that counsel be obtained at Fort Bliss.

Other matters required Wall's attention so he confined the accused in a detention cell at the hospital. About a half hour later, Wall told the accused he would have "to contact" Fort Bliss "to get him legal counsel." Thereupon, the accused remarked: "Well, that's all right, I decided I don't want one and I'll answer your questions." Wall testified that he again "warned" the accused of his rights, which he again enumerated as above, and then specifically asked the accused whether he desired legal counsel. The accused responded, "No." Wall proceeded to question the accused, and the accused made the admissions in issue.

During cross-examination, Wall admitted that at a hearing by the investigation officer appointed under Article 32, Uniform Code of Military Justice, 10 USC § 832, he had testified that he "could not be sure" that when he advised the accused of his right to counsel he had said, " 'Legal counsel would be appointed for you at no expense to you.' " Asked to explain the difference between this testimony and his trial testimony, he testified that the "only way . . . [he could] answer this is to say I do normally tell them this when I give the warning." He maintained that he had given such advice "approximately 2,000 times" since the "Miranda warning came into effect." He acknowledged that normally he read the advice from a card he carried, but he did not have the card at the interview with the accused. He further admitted he could not "say for certain under oath" that he had informed the accused he had the right to detailed counsel at no expense, but he insisted that "I feel sure in my own mind that definitely the last time . . . [the accused] was informed of this."

In denying the motion to suppress and admitting the accused's statements, the trial judge made specific findings of fact. Among other things, he found that "complete warning" as to the right to counsel was given the accused before he made the statement, and "that the accused did tell Mr. Wall that he did not want counsel, that counsel was not necessary; and that the accused did knowingly, intelligently, consciously, and voluntarily waive his right to counsel and his right to remain silent."

The admissibility of a pretrial statement by the accused "need only be supported by a preponderance of the evidence." United States v Mewborn, 17 USCMA 431, 437, 38 CMR 229, 235 (1968); Lego v Twomey, 404 US 477 (1972). If believed, Wall's testimony on direct examination as to the extent of his advice to the accused was more than sufficient to justify the trial judge's conclusion that he had properly informed the accused as to his right to military counsel without cost. However, appellate defense counsel perceived Wall's concession during cross-examination, that he could not "say for certain under oath" that he had so advised the accused, as diluting the strength of the direct testimony to a degree requiring the conclusion that the Government had "failed to carry its burden" of proof.

Proof of the existence of an essential fact to the degree required by law is not susceptible of the kind of precise determination that is assured by the weights

and measures of science or commerce. Indeed, as Professor Wigmore has observed, there may be no satisfactory quantitative "mode of measurement for the intensity of human belief." 9 Wigmore, Evidence § 2497, at 325 (3d ed. 1940). But, as the late Justice Harlan pointed out, the phrase preponderance of the evidence "communicate[s] to the finder of fact . . . [a workable notion] concerning the degree of confidence he is expected to have in the correctness of his factual conclusions." *In re* Winship, 397 US 358, 368 (1970).

Wall did not, as the witness did in United States v Parham, 14 USCMA 161, 33 CMR 373 (1963), refuse to testify to the essential fact in issue. True, Wall, like the witness in *Parham,* admitted that he could not "say for certain under oath" that he gave the requisite advice to the accused, but the "sum and substance" of his testimony establishes him as the "honest and cautious witness [who] refused to accord absolute certainty" to his recall of the event, rather than as a witness who had "such grave reservations and doubts that he would not, upon his oath, declare" the existence of the essential fact. *Id.* at 165, 33 CMR at 377. In *Parham,* the witness admitted that he could not identify the defendant as the wrongdoer "because . . . [he had] no sufficient proof of this;" Wall, however, maintained that he had given the required advice on approximately 2,000 similar occasions, and he consistently insisted that he was "sure" in his "own mind" that he had advised the accused as to the matters in issue before he questioned him. *In Parham,* the witness admitted he did not "know really that" the accused was the culprit, and he was not "fully convinced"; Wall's testimony leaves no doubt that he was convinced that he had advised the accused.

Besides Wall's testimony, other evidence bearing on the matter was before the trial judge. Immediately upon completion of Wall's advice, the accused asked for counsel, and he was taken to Captain Phillips, a qualified military lawyer. Although Captain Phillips determined that he could not act as accused's counsel, his account of the meeting with the accused demonstrates, as the trial judge found, that the accused was "fully aware that he had the right to have a military attorney appointed at no expense to him." It can reasonably be inferred that the accused's awareness of the right resulted from the advice he received from Wall.

Considering all the evidence, the trial judge could, in our opinion, properly conclude that a preponderance thereof proved that before he questioned the accused, Wall advised him of the right to free military counsel. See United States v Goard, 13 USCMA 588, 33 CMR 120 (1963). Accordingly, we sustain his ruling admitting the accused's pretrial statements in evidence, and we affirm the decision of the Court of Military Review.

Chief Judge DARDEN and Judge DUNCAN concur.